

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

KENT L. and LINDA DAVIS, )
JEFFREY and SUSAN TRININ, and ) DIVISION ONE
SUSAN MAYER, derivatively on behalf )
of OLYMPIA FOOD COOPERATIVE ) No. 71360-4-I
)
Appellants, ) PUBLISHED OPINION
)
v. )
)
GRACE COX, ROCHELLE GAUSE, )
ERIN GENIA, T.J. JOHNSON, JAYNE )
KASZYNSKI, JACKIE KRZYZEK, )
JESSICA LAING, RON LAVIGNE, )
HARRY LEVINE, ERIC MAPES, )
JOHN NASON, JOHN REGAN, ROB )
RICHARDS, SUZANNE SHAFER, )
JULIA SOKOLOFF, and JOELLEN )
REINECK WILHELM, )
)
Respondents. ) FILED: April 7, 2014
_____ )

DWYER, J. — To determine whether a pleaded cause of action falls within the ambit of Washington's anti-SLAPP[1] statutes, the trial court must decide whether the claim targets activity involving public participation and petition. To properly do so, the trial court must focus on the principal thrust or gravamen of the claim. A consideration of the relief sought by the party asserting the cause of action can be a determinative factor when resolving this question. Here, the

---

[1] Washington Act Limiting Strategic Lawsuits Against Public Participation.

plaintiffs' prayer for relief included a request that the court order the defendants to cease activity protected by the First Amendment. Accordingly, the trial court correctly ruled that the complaint was subject to an anti-SLAPP motion to strike.[2] Because the plaintiffs did not demonstrate a sufficient likelihood of success on the merits of their claim, as required by the relevant statute, the trial court also properly granted the defendants' motion to dismiss. Given that these two rulings were properly made, and because we find no error in the other rulings of the trial court, we affirm.

I

The Olympia Food Co-op (Co-op) is a nonprofit corporation with over 22,000 members. The Co-op was formed pursuant to the Washington Nonprofit Corporation Act[3] with the express purpose of "contribut[ing] to the health and well-being of people by providing wholesome foods and other goods and services, accessible to all, through a locally-oriented, collectively managed, not-for-profit cooperative organization that relies on consensus decision making." The Co-op has a long and active history of engagement in social, human rights, ecology, community welfare, and peace and justice issues. In 1993, the Co-op's board of directors "adopted" a Boycott Policy that prescribed a procedure by which the Co-op would recognize product boycotts. The Policy provides, in pertinent part, as follows:

---

[2] RCW 4.24.525 provides that a party may successfully bring a motion to strike any claim so long as the moving party shows by a preponderance of the evidence that the claim is based on an action involving public participation and petition, and so long as the responding party fails to establish by clear and convincing evidence a probability of prevailing on the claim.

[3] Ch. 24.03 RCW.

BOYCOTT POLICY
Whenever possible, the Olympia Food Co-op will honor nationally recognized boycotts which are called for reasons that are compatible with our goals and mission statement.
. . .
A request to honor a boycott . . . will be referred . . . to determine which products and departments are affected. . . . The [affected] department manager will make a written recommendation to the staff who will decide by consensus whether or not to honor a boycott.
. . .
The department manager will post a sign informing customers of the staff's decision . . . regarding the boycott. If the staff decides to honor a boycott, the [Merchandising Coordinator] will notify the boycotted company or body of our decision. . . .

In March 2009, a cashier proposed to the staff work group a boycott of Israeli goods and financial investments. The staff members comprising the Merchandising Coordination Action team (MCAT) considered the request and attempted to reach an internal consensus for more than a year. After failing to reach a consensus, the MCAT reported its failure to the board. In May 2010, the board instructed the staff to again attempt to achieve full staff consensus. After this renewed effort failed, the board—at its next meeting in July 2010—by consensus agreed to support the boycott and adopted a resolution approving a boycott of Israeli-made products and divestment from Israeli companies. At the same time, the board invited any dissenting members to put the board's decision to a vote as provided for by the Co-op's bylaws. The board also posted a reminder on the Co-op's website informing members that they could compel a member vote by gathering the requisite number of signatures. No member pursued this option.

On September 2, 2011, Kent Davis, Linda Davis, Jeffrey Trinin, Susan

Trinin, and Susan Mayer (collectively Members) filed a derivative suit on behalf of the Co-op against 16 current and former board members (collectively Directors) in Thurston County Superior Court. Their complaint was filed in the wake of a failed attempt by 3 Members to be elected to the board, and following a demand letter sent from the Members to the Directors, wherein the Members stated that if the boycott was not rescinded, "we will bring legal action against you, and this process will become considerably more complicated, burdensome, and expensive than it has been already." In their complaint, the Members alleged that the Directors acted ultra vires and breached their fiduciary duties. The Members sought a declaratory judgment that the boycott was void, permanent injunctive relief preventing its enforcement, and monetary damages from all 16 defendants. The Members also served each defendant with a 13-page discovery demand and, several weeks later, noticed videotaped depositions of each defendant.

On November 1, the Directors filed a special motion to strike the Members' complaint pursuant to RCW 4.24.525—Washington's anti-SLAPP statute. The anti-SLAPP statute contains a two step process that a trial court must utilize in ruling on such a motion.

> A moving party bringing a special motion to strike a claim under this subsection has the initial burden of showing by a preponderance of the evidence that the claim is based on an action involving public participation and petition. If the moving party meets this burden, the burden shifts to the responding party to establish by clear and convincing evidence a probability of prevailing on the claim. If the responding party meets this burden, the court shall deny the motion.

RCW 4.24.525(4)(b). The statute defines an "action involving public participation

and petition," in pertinent part, as "[a]ny other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public concern, or in furtherance of the exercise of the constitutional right of petition." RCW 4.24.525(2)(e).

The Members opposed the motion and, in response, brought a motion for discovery, arguing that they were entitled to discovery pursuant to the "good cause" exception to the automatic discovery stay provision of RCW 4.24.525(5)(c). The Directors opposed the Members' discovery motion. The trial court heard argument on February 23, 2012 and denied the Members' motion. The court's basis for denying the request for discovery was twofold: (1) the request was belated, and (2) it was "broad-ranging" and "not focused."

Subsequently, on February 27, the court granted the Directors' motion to strike the Members' claims. The court ruled that the Directors had shown by a preponderance of the evidence that their conduct fit within the statutory category of "any other lawful conduct in . . . furtherance of the exercise of a constitutional right of free speech in connection with an issue of public concern or in furtherance of the exercise of the constitutional right of petition," and that the Members had failed to establish by clear and convincing evidence a probability of prevailing on their claims.

In dismissing the Members' claims, the court rejected their argument that the board lacked authority to resolve the boycott issue, instead concluding that the board's authorization in the bylaws to "resolve organizational conflicts after all other avenues of resolution have been exhausted" gave the board authority to

adopt the boycott. In considering this issue, the court excluded as hearsay the declarations of two former board members, Tibor Bruer and Susan Trinin, who asserted that the board, by adopting the Boycott Policy, did not intend to retain the authority to enact a boycott if the staff failed to reach a consensus. However, the court did not exclude as hearsay the declaration of Harry Levine, another former board member, who stated that the board, by adopting the Boycott Policy, did not intend to relinquish its authority to resolve organizational conflict with respect to boycotts.

After rejecting the Members' various constitutional challenges to the anti-SLAPP statute, the trial court ordered the Members to pay a total of $221,846.75 to the various defendants, which included attorney fees and $10,000 in statutory damages payable to each named defendant, as mandated by the anti-SLAPP statute. RCW 4.24.525(6)(a)(ii).

The Members subsequently sought direct review in the Supreme Court. The Supreme Court denied direct review and transferred the case to Division Two, which then transferred the case to us.

II

The Members assign error to the trial court's grant of the Directors' anti-SLAPP motion. Specifically, the Members argue that the Directors failed to establish by a preponderance of the evidence that the lawsuit targeted activity involving public participation and petition and that, even if the Directors did meet their burden, the Members established by clear and convincing evidence a

probability of prevailing on their claims. We are not persuaded by these arguments.

"We review the grant or denial of an anti-SLAPP motion de novo." Dillon v. Seattle Deposition Reporters, LLC, __ Wn. App. __, 316 P.3d 1119, 1133 (2014). "Under the anti-SLAPP statute, a party may bring a special motion to strike 'any claim that is based on an action involving public participation and petition.'" Dillon, 316 P.3d at 1132 (quoting RCW 4.24.525(4)(a)). The two step process by which we decide an anti-SLAPP motion is as follows:

> In deciding an anti-SLAPP motion, a court must follow a two step process. A party moving to strike a claim has the initial burden of showing by a preponderance of the evidence that the claim targets activity "involving public participation and petition," as defined in RCW 4.24.525(2). U.S. Mission Corp. v. KIRO TV, Inc., 172 Wn. App. 767, 782-83, 292 P.3d 137, review denied, 177 Wn.2d 1014, 302 P.3d 181 (2013). If the moving party meets this burden, the burden shifts to the responding party "to establish by clear and convincing evidence a probability of prevailing on the claim." RCW 4.24.525(4)(b). If the responding party fails to meet its burden, the court must grant the motion, dismiss the offending claim, and award the moving party statutory damages of $10,000 in addition to attorney fees and costs. RCW 4.24.525(6)(a)(i), (ii).

Dillon, 316 P.3d at 1132. "[T]he procedure for deciding anti-SLAPP motions is similar to that used in deciding a motion for summary judgment." Dillon, 316 P.3d at 1132. Thus, a court ruling on an anti-SLAPP motion "shall consider pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." RCW 4.24.525(4)(c). However, "the trial court may not find facts, but rather must view the facts and all reasonable inferences therefrom in the light most favorable to the plaintiff." Dillon, 316 P.3d at 1143.

A

We first inquire whether the trial court erred by concluding that the Directors did, in fact, establish by a preponderance of the evidence that the Members' claims targeted activity "involving public participation and petition." The Members contend that the Directors failed to meet their burden. This is so, they assert, because their lawsuit was meant to correct corporate malfeasance, not to target constitutionally protected speech. We disagree.

The anti-SLAPP statute defines "an action involving public participation and petition" as follows:

> (a) Any oral statement made, or written statement or other document submitted, in a legislative, executive, or judicial proceeding or other governmental proceeding authorized by law;
> (b) Any oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a legislative, executive, or judicial proceeding or other governmental proceeding authorized by law;
> (c) Any oral statement made, or written statement or other document submitted, that is reasonably likely to encourage or to enlist public participation in an effort to effect consideration or review of an issue in a legislative, executive, or judicial proceeding or other governmental proceeding authorized by law;
> (d) Any oral statements made, or written statement or other document submitted, in a place open to the public or a public forum in connection with an issue of public concern; or
> (e) Any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public concern, or in furtherance of the exercise of the constitutional right of petition.

RCW 4.24.525(2). Recently, we adopted a guiding principle for determining whether a lawsuit targets constitutionally protected speech.

> "[I]t is the *principal thrust* or *gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies and when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected

activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute."

Dillon, 316 P.3d at 1134 (quoting Martinez v. Metabolife Int'l, Inc., 113 Cal. App. 4th 181, 188, 6 Cal. Rptr. 3d 494 (Cal. App. 2003)). Moreover, if the plaintiffs' cause of action "targets conduct that advances and assists" the defendants' exercise of a protected right, then the cause of action targets the exercise of that protected right. Greater L.A. Agency on Deafness, Inc. v. Cable News Network, 742 F.3d 414, 423 (9th Cir. 2014) (applying California law).[4] Additionally, "[b]ecause the legislature's intent in adopting RCW 4.24.525 was to address 'lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances,' this court looks to First Amendment cases to aid in its interpretation." City of Seattle v. Egan, __ Wn. App. __, 317 P.3d 568, 570 (2014) (quoting LAWS OF 2010, ch. 118, §1(a)).

In seeking to identify the principal thrust or gravamen of the Members' claim, it is instructive to look to the remedy sought. One remedy the Members sought was permanent injunctive relief. In essence, the Members sought to have the court permanently enjoin the Directors from continuing the boycott. Because the nonviolent elements of boycotts are protected by the First Amendment, NAACP v. Claiborne Hardware Co., 458 U.S. 886, 915, 102 S. Ct. 3409, 73 L. Ed. 2d 1215 (1982), the Members' desired remedy reveals that the principal thrust of their suit is to make the Directors cease engaging in activity protected by

---

[4] "Washington's anti-SLAPP statute mirrors California's anti-SLAPP statute. Therefore, in most circumstances, California cases may be considered as persuasive authority when interpreting RCW 4.24.525." Dillon, 316 P.3d at 1132 n.21.

the First Amendment. This is of great significance in resolving the question presented.

The Directors assert that the boycott is "an action involving public participation" because it is "*lawful* conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of *public concern.*" RCW 4.24.525(2)(e) (emphasis added). Therefore, we must next determine whether the boycott is in connection with an issue of public concern. "Speech deals with matters of public concern when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" Snyder v. Phelps, 131 S. Ct. 1207, 1216, 179 L. Ed. 2d 172 (2011) (quoting Connick v. Myers, 461 U.S. 138, 146, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983)). The trial court, as part of its ruling that the boycott was in connection with an issue of public concern, observed the following:

> Four decades of conflict in the Middle East have accompanied the issues that surround the purposes behind this proposed Boycott and Divestment Resolution. . . . And for four decades, the matter has been a matter of public concern in America and debate about America's role in resolving that conflict. I don't believe there can be any dispute about that issue being a matter of public concern.

The trial court correctly ruled that the boycott decision was in connection with an issue of public concern.

Rather than challenge this aspect of the ruling, the Members assert that the trial court erred because the Directors' conduct was not "lawful," as required by RCW 4.24.525(2)(e). In essence, the Members argue that adopting the boycott was not "lawful" because the board violated the Boycott Policy in doing so.

- 10 -

Although we consider whether the Directors' activity was "lawful" under the first step of the anti-SLAPP motion analysis, our review is limited to determining whether the activity was illegal as a matter of law. If, as part of our review under the first step, we accepted the Members' invitation to consider whether the Directors improperly adopted the boycott, the second step would be rendered superfluous and the burden of proof would be improperly shifted. Chavez v. Mendoza, 94 Cal. App. 4th 1083, 1089, 114 Cal. Rptr. 2d 825 (Cal. Dist. Ct. App. 2001) ("[U]nder the statutory scheme, a court must generally presume the validity of the claimed constitutional right in the first step of the anti-SLAPP analysis, and then permit the parties to address the issue in the second step of the analysis, if necessary. Otherwise, the second step would become superfluous in almost every case, resulting in an improper shifting of the burdens." (citation omitted)); see also Gerbosi v. Gaims, Weil, West & Epstein, LLP, 193 Cal. App. 4th 435, 446, 122 Cal. Rptr. 3d 73 (Cal. Dist. Ct. App. 2011) ("[W]hen a defendant's assertedly protected activity *may or may not be* criminal activity, the defendant may invoke the anti-SLAPP statute *unless the activity is criminal as a matter of law.*" (second emphasis added)). The Members do not assert that the decision to boycott Israeli goods was an activity that was illegal as a matter of law. Rather, they contend that it was a decision made in contravention of the governing rules of the Co-op. Thus, we conclude that the Directors' adoption of the boycott was "lawful" under the first step of the anti-SLAPP statute.[5]

The Directors demonstrated that the boycott was constitutionally

---

[5] The Directors also assert that the boycott is protected as an act of petition. However, because the boycott constitutes protected speech activity, we need not address whether it is also protected as an act of petitioning.

- 11 -

protected, lawful, and in connection with an issue of public concern. The Members sought a court order requiring the protected activity to stop. Accordingly, the trial court did not err by concluding that the Directors established that the Members' claims targeted activity involving public participation and petition.

B

We next inquire whether the trial court erred by concluding that the Members failed to establish by clear and convincing evidence a probability of prevailing on their claims. The Members contend that the trial court erred by improperly weighing the evidence and by ruling as a matter of law that they did not meet their burden. Although the trial court did err by improperly weighing the evidence, its error was harmless. Accordingly, the trial court did not err by ruling as a matter of law that the Members failed to meet their burden.

The Members assert that the trial court improperly weighed evidence. This is so, they aver, because the trial court—presented with competing theories as to whether a nationally recognized boycott existed and as to whether an organizational conflict existed—improperly weighed the evidence and accepted the Directors' theories. We agree.

"The role of the trial court in determining whether the plaintiff has met his or her burden under the second step of the anti-SLAPP motion to dismiss analysis is akin to the trial court's role in deciding a motion for summary judgment." Dillon, 316 P.3d at 1142. Thus, "[t]he trial court may not find facts or make determinations of credibility." Dillon, 316 P.3d at 1142. "Instead, 'the court

shall consider pleadings and supporting and opposing affidavits stating the facts.'" Dillon, 316 P.3d at 1142 (quoting RCW 4.24.525(4)(c)). "[I]n analyzing whether the plaintiff has shown, by clear and convincing evidence, a probability of prevailing on the merits" the trial court "must view the facts and all reasonable inferences therefrom in the light most favorable to the plaintiff." Dillon, 316 P.3d at 1143.

The Boycott Policy states that "[w]henever possible, the Olympia Food Co-op will honor nationally recognized boycotts." The Members argued that "nationally recognized" is synonymous with "nationally accepted," and offered evidence indicating that the movement to boycott Israeli products had failed to gain traction on a national scale. Nevertheless, the trial court accepted the Directors' theory and ruled that a nationally recognized boycott existed because "[t]he question of its national scope is not determined by the degree of acceptance."

Here, the meaning of the Boycott Policy depends on a choice among reasonable inferences. It is not clear from the Policy whether "nationally recognized" means that boycotts have been enacted across the nation as the Members contend, or whether it means that people and organizations are trying to enact boycotts across the nation, as the Directors contend. Both parties presented evidence in favor of their interpretations—the Members, evidence that Israeli boycotts had failed on a national level; the Directors, evidence that hundreds of member organizations of the U.S. Campaign to end the Israeli Occupation existed across the country—which required the trial court to choose

between reasonable inferences. When the trial court drew an inference in favor of the Directors, it erred.

The parties also offered different theories as to whether a lack of consensus among the staff created an organizational conflict that the board could resolve or whether it simply meant that consensus had not been achieved—constituting a decision in and of itself, given the requirement to reach a consensus for a decision to be made. Again, in ruling against the Members, the trial court weighed the evidence, selectively excluded declarations submitted by the Members (while relying on a declaration submitted by the Directors), and failed to credit reasonable inferences from the Members' evidence. This was also error. However, because the Boycott Policy does not bind the board, the trial court's errors were harmless.

Both parties agree that the board "adopted" the Boycott Policy in 1993, but neither party explained what effect adopting the Policy had on the board's authority to manage the corporation. Generally, "[t]he charter of a corporation and its by-laws are the fundamental documents governing the conduct of corporate affairs." Liese v. Jupiter Corp., 241 A.2d 492, 497 (Del. Ch. 1968). The Co-op's bylaws require the board to "adopt major policy changes," but do not further mandate that the board comply with adopted policy changes. Moreover, the Policy does not contain any language that obligates the board to adhere to it once adopted. Presumably, if the board failed to comply with an adopted policy, and a sufficient number of members were troubled by that fact, they could

exercise their right to vote the board members off of the board.[6] However, neither an applicable statute, the articles of incorporation, nor the bylaws compel the board to comply with adopted policies. Thus, although adopting the Policy presented an opportunity for staff involvement, the board did not relinquish its ultimate authority to adopt boycotts pursuant to its general authority to manage the Co-op.

Indeed, notwithstanding the Co-op's emphasis on consensus decision-making, the bylaws task the board with managing the Co-op.[7] By virtue of being tasked with managing the corporation, the board may avail itself of the business judgment rule. The business judgment rule cautions against courts substituting their judgment for that of the board of directors, absent evidence of fraud, dishonesty, or incompetence. In re Spokane Concrete Prods., Inc., 126 Wn.2d 269, 279, 892 P.2d 98 (1995). The Members did not present any evidence of fraud, dishonesty, or incompetence by the board. Instead, they argued that the board lacked the authority to adopt the boycott. However, because we conclude that the board did have the authority to adopt the boycott, and since no evidence of fraud, dishonesty, or incompetence was presented, there is no basis for us to question the board's decision to adopt the boycott.

Nonetheless, the Members point to the board's subsequent efforts to amend the Boycott Policy as evidence that the board could not simply disregard

---

[6] In fact, several of the appellants ran against several respondent board members in a subsequent election. However, they were unsuccessful in attempting to oust the respondent board members.

[7] Additionally, the Washington Nonprofit Corporation Act makes clear that "[t]he affairs of a corporation shall be managed by a board of directors." RCW 24.03.095.

an adopted policy. However, the board's attempt to amend the Policy is open to any number of explanations, including a desire to avoid the perception that it was usurping the Co-op's goal of consensus decision-making. Although the Co-op as an organization—including, in all likelihood, the board members in this lawsuit—may aspire to consensus decision-making, this aspiration does not imbue the Boycott Policy with authority equivalent or superior to that of the applicable statutes, articles of incorporation, or the bylaws.

Ultimately, the Members failed to meet their burden. Although the trial court based its decision on the board's authority to resolve organizational conflict, we affirm, instead, on the basis that the Co-op's governing documents provided the board with the authority to adopt the boycott.[8]

## III

In addition to their contention that the trial court committed reversible error by granting the Directors' anti-SLAPP motion, the Members assert that the trial

---

[8] The Members also assert that the trial court erred by requiring them to meet the "clear and convincing evidence" standard, rather than the statutorily prescribed "clear and convincing evidence [of] a probability of prevailing on the claim" standard. The transcript from the February 27, 2012 hearing rebuts this assertion.

> Therefore, the analysis shifts to the second prong of the statute, where plaintiffs must prove by clear and convincing evidence a probability of prevailing on the claim.
> This is a new law, and it is also a new or unique evidence standard. Clear and convincing evidence of a fact is something that the courts are very used to dealing with. Clear and convincing evidence of a probability is certainly more unique than clear and convincing evidence of a fact. Probability, I am satisfied, relying upon the authorities provided me by the plaintiff, means less than the preponderance standard. But the evidence, to meet that threshold standard, must be clear and convincing under the law.
> Some writers have suggested that the proof standard here is akin to the summary judgment standard under Civil Rule 56. My application of the evidence burden here is not dissimilar to that.

The trial court clearly applied the correct standard.

court erred in its evidentiary rulings. Specifically, they argue that the trial court erred by refusing to consider declarations offered by the Members, in which two former board members—Trinin and Bruer—opined as to what the board intended when it adopted the Boycott Policy. We disagree.

"Ordinarily, evidentiary rulings are reviewed for abuse of discretion. However, '[t]he de novo standard of review is used by an appellate court when reviewing all trial court rulings made in conjunction with a summary judgment motion.'" Momah v. Bharti, 144 Wn. App. 731, 749, 182 P.3d 455 (2008) (alteration in original) (quoting Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998)). Because "the procedure for deciding anti-SLAPP motions is similar to that used in deciding a motion for summary judgment," Dillon, 316 P.3d at 1132, we review de novo the trial court's evidentiary ruling made here in conjunction with the anti-SLAPP motion.

The Members first assert that because both declarants were members of the board when it adopted the Boycott Policy, their statements constitute an admission by the board. An admission by a party opponent does not constitute hearsay. ER 801(d)(2). However, the Members overlook the requirement that board members must have speaking authority for ER 801(d)(2) to apply.

> When applying ER 801(d)(2), Washington follows the Restatement (Second) of Agency, § 286 (1958), which requires that an agent have speaking authority. Codd v. Stevens Pass, Inc., 45 Wn. App. 393, 404, 725 P.2d 1008 (1986), review denied, 107 Wn.2d 1020 (1987); Donald B. Murphy Contractors, Inc. v. State, 40 Wn. App. 98, 108-10, 696 P.2d 1270, review denied, 103 Wn.2d 1039 (1985). In order to fall under the rule, the declarant must be authorized to make the particular statement at issue, or statements concerning the subject matter, on behalf of the party. Lockwood v. A C & S, Inc., 109 Wn.2d 235, 262, 744 P.2d 605 (1987); Barrie v. Hosts of

Am., Inc., 94 Wn.2d 640, 644, 618 P.2d 96 (1980). When a person does not have specific express authority to make statements on behalf of a party, the overall nature of his authority to act for the party may determine if he is a speaking agent. Lockwood, [109 Wn.2d] at 262.

Passovoy v. Nordstrom, Inc., 52 Wn. App. 166, 169-70, 758 P.2d 524 (1988). The Members provide no evidence that either declarant was authorized to speak on behalf of the board. Accordingly, ER 801(d)(2) does not exempt their testimony from application of the hearsay rules.

The Members next assert that the declarants' testimony does not constitute hearsay because it was based on personal knowledge. In support of this assertion, the Members rely on Snohomish County Fire District No. 1 v. Snohomish County Disability Board, 128 Wn. App. 418, 115 P.3d 1057 (2005). There, we affirmed a trial court's decision to admit a board member's affidavit where the board member testified from personal knowledge. Snohomish County Fire Dist., 128 Wn. App. at 422-23 n.1. However, we based our decision on the fact that the board member's statements "were offered to show the research and procedure that the Board used in adopting the Rules, not to prove the truth of the substance of the statements." Snohomish County Fire Dist., 128 Wn. App. at 423 n.1. To the contrary, here, both declarants' testimony was offered to prove the truth of the matter asserted: namely, that the board intended to relinquish to the staff its authority to adopt a boycott. Accordingly, the trial court did not err in excluding the declaration testimony as hearsay.

IV

The Members next contend that the trial court erred by denying their

discovery motion. As the Members failed to show "good cause" for discovery, their contention is unavailing.

The automatic discovery stay provision in the anti-SLAPP statute reads thusly:

> All discovery and any pending hearings or motions in the action shall be stayed upon the filing of a special motion to strike under subsection (4) of this section. The stay of discovery shall remain in effect until the entry of the order ruling on the motion. Notwithstanding the stay imposed by this subsection, the court, on motion and for good cause shown, may order that specified discovery or other hearings or motions be conducted.

RCW 4.24.525(5)(c).

"Appellate courts ordinarily review discovery rulings for abuse of discretion." Fellows v. Moynihan, 175 Wn.2d 641, 649, 285 P.3d 864 (2012). California courts have applied this familiar standard when reviewing decisions made pursuant to its anti-SLAPP statute's "good cause" exception to the automatic discovery stay provision. 1-800 Contacts, Inc. v. Steinberg, 107 Cal. App. 4th 568, 593, 132 Cal. Rptr. 2d 789 (Cal. Dist. Ct. App. 2003); Sipple v. Foun. for Nat'l Progress, 71 Cal. App. 4th 226, 247, 83 Cal. Rptr. 2d 677 (Cal. Dist. Ct. App. 1999). Given this persuasive authority, we review the trial court's denial of the Members' discovery motion for abuse of discretion.

"A trial court abuses its discretion only when its decision is manifestly unreasonable or based on untenable grounds." In re Marriage of Fiorito, 112 Wn. App. 657, 663-64, 50 P.3d 298 (2002). "[I]t is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard." Fiorito, 112 Wn. App. at 664.

California courts have provided guidance in interpreting the meaning of "good cause" for discovery in the context of their state's anti-SLAPP statute.[9]

> Decisions that have considered what constitutes such a showing of good cause have described it as a showing "that a defendant or witness possesses evidence needed by plaintiff to establish a prima facie case." (Lafayette Morehouse[, Inc. v. Chronicle Publ'g Co.], 37 Cal. App. 4th [855,] 868[, 44 Cal. Rptr. 2d 46 (Cal. Dist. Ct. App. 1995)].) The showing should include some explanation of "what additional facts [plaintiff] expects to uncover . . . . " (Sipple [v. Found. for Nat'l Progress], 71 Cal. App. 4th [226,] 247[, 83 Cal. Rptr. 2d 677 (Cal. Dist. Ct. App. 1999)]; see also Nicosia v. De Rooy, 72 F. Supp. 2d 1093, 1111 [N.D. Cal. 1999].) Only in these circumstances is the discretion under section 425.16, subdivision (g) to be "liberally exercise[d]." (Lafayette Morehouse, supra, 37 Cal. App. 4th at p. 868.) Discovery may not be obtained merely to "test" the opponent's declarations. (Sipple, supra, 71 Cal. App. 4th at p. 247.)

1-800 Contacts, 107 Cal. App. 4th at 593. Moreover, the "good cause" standard is similar to Civil Rule (CR) 56(f), which allows a party faced with a summary judgment motion to seek a continuance to engage in discovery "essential to justify his opposition." Pursuant to CR 56(f), the nonmoving party must show "how additional discovery would preclude summary judgment and why a party cannot immediately provide 'specific facts' demonstrating a genuine issue of material fact." Hewitt v. Hewitt, 78 Wn. App. 447, 455, 896 P.2d 1312 (1995).

The Members sought to depose two individuals who had submitted declarations in support of the Directors' special motion to strike and a defendant who they claimed "has abundant evidence regarding the Board's process, thinking, purposes, and understandings regarding the Boycott Policy and the Israel Boycott and Divestment Policies at the time those policies were adopted."

---

[9] Cal. Civ. Proc. Code § 425.16(g).

The Members also sought access to "all documents in possession of each of the Defendants and the Co-op relating in any way to the Co-op's Boycott Policy and actions taken related thereto." In explaining why it was necessary to depose witnesses, the Members stated that it was to "test the veracity of Defendants' voluminous factual allegations."

Explaining the standard that it was applying, the trial court stated, "I conclude that in the good-cause exception of the anti-SLAPP statute, the test is at least as stringent and as narrow as the Civil Rule 56 test." The trial court explained that the CR 56 test "requires an explanation of what the moving party, the party seeking additional discovery or time to prepare declarations, expects to discover and why it's important to the motion." In light of the fact that "the procedure for deciding anti-SLAPP motions is similar to that used in deciding a motion for summary judgment," Dillon, 316 P.3d at 1132, we conclude that the trial court applied the correct legal standard.

The Members did not satisfy this standard. The trial court, in declining to find "good cause," explained that it was denying the motion for discovery for two reasons: "First, it comes at the end of the process. . . . Second, the discovery is not focused." As the trial court correctly concluded, the discovery request was an expansive request with the stated goal of "test[ing] the veracity of Defendants' voluminous factual allegations." However, 1-800 Contacts and Sipple preclude this motivation as a basis for granting relief from the stay. 107 Cal. App. 4th at 593; 71 Cal. App. 4th at 247. Additionally, the Members failed to identify with any specificity what portion of their request for *all* documents in possession of the

directors in connection with the Boycott Policy was needed to establish a prima facie case. Therefore, the trial court did not err in denying the motion.

V

The Members next challenge the constitutionality of the anti-SLAPP statute, both on its face and as applied to them. They identify two offending provisions: (1) the automatic discovery stay, and (2) the requirement that they establish by clear and convincing evidence a probability of prevailing on their claims. None of their arguments persuade us that either provision is unconstitutional.

We review the constitutionality of a statute de novo. Putman v. Wenatchee Valley Med. Ctr., 166 Wn.2d 974, 978, 216 P.3d 374 (2009). "Statutes are presumed to be constitutional, and '[t]he challenger bears the burden of showing the statute is unconstitutional beyond a reasonable doubt.'" Ringhofer v. Ridge, 172 Wn. App. 318, 327, 290 P.3d 163 (2012) (alteration in original) (quoting City of Bothell v. Barnhart, 172 Wn.2d 223, 229, 257 P.3d 648 (2011)), review denied, 177 Wn.2d 1009 (2013). Indeed, we will strike down a statute only if we are "'fully convinced, after a searching legal analysis, that the statute violates the constitution.'" Sch. Dists.' Alliance for Adequate Funding of Special Educ. v. State, 170 Wn.2d 599, 606, 244 P.3d 1 (2010) (quoting Island County v. State, 135 Wn.2d 141, 147, 955 P.2d 377 (1998)).

A

The Members argue that the mandatory discovery stay is unconstitutional. They first contend that the mandatory discovery stay violates our separation of

powers doctrine. This is so, they assert, because the discovery stay conflicts with CR 26(c) and, since the anti-SLAPP statute is procedural in nature, the court rule must prevail. Their contention is unavailing.

Washington's constitution "does not contain a formal separation of powers clause, but 'the very division of our government into different branches has been presumed throughout our state's history to give rise to a vital separation of powers doctrine.'" Putman, 166 Wn.2d at 980 (internal quotation marks omitted) (quoting Brown v. Owen, 165 Wn.2d 706, 718, 206 P.3d 310 (2009)). Washington courts are "vested with judicial power from article IV of our state constitution and from the legislature under RCW 2.04.190. The inherent power of article IV includes the power to govern court procedures." City of Fircrest v. Jensen, 158 Wn.2d 384, 394, 143 P.3d 776 (2006) (footnote omitted). "When a court rule and a statute conflict, the court will attempt to harmonize them, giving effect to both." Jensen, 158 Wn.2d at 394. However, if a statute and a court rule "cannot be harmonized, the court rule will prevail in procedural matters and the statute will prevail in substantive matters." Putman, 166 Wn.2d at 980.

The Members assert that this automatic discovery stay conflicts with CR 26(c). Specifically, they argue that while CR 26(c) allows a party to seek relief from the court if requested discovery is onerous or burdensome, RCW 4.24.525(5)(c) takes the opposite approach by staying all discovery unless good cause is shown. However, the anti-SLAPP statutory requirement that good cause be shown imposes no greater burden than does CR 56(f), which allows a party faced with a summary judgment motion to obtain discovery that is

"essential to justify his opposition." See Dillon, 316 P.3d at 1142; see also Britts v. Superior Court, 145 Cal. App. 4th 1112, 1129, 52 Cal. Rptr. 3d 185 (Cal. Dist. Ct. App. 2006) (holding that California's automatic discovery stay does not violate separation of powers principles). Given that the automatic discovery stay is no more burdensome than CR 56(f), a rule applied without constitutional controversy for many years, the Members have not established that it is unconstitutional.

The Members next argue that the automatic discovery stay violates their right of access to the courts. However, our recent decision in In re Estate of Fitzgerald, 172 Wn. App. 437, 294 P.3d 720 (2012), review denied, 177 Wn.2d 1014 (2013), militates against striking down the automatic discovery stay on this basis.

"The people have a right of access to courts; indeed, it is 'the bedrock foundation upon which rest all the people's rights and obligations.'" Putman, 166 Wn.2d at 979 (quoting John Doe v. Puget Sound Blood Ctr., 117 Wn.2d 772, 780, 819 P.2d 370 (1991)). "This right of access to courts 'includes the right of discovery authorized by the civil rules'" and "'[i]t is common legal knowledge that extensive discovery is necessary to effectively pursue either a plaintiff's claim or a defendant's defense.'" Putman, 166 Wn.2d at 979 (alteration in original) (quoting John Doe, 117 Wn.2d at 782). Recently, we explained our Supreme Court's holding in Putman with regard to access to courts.

> In Putman, our Supreme Court considered the constitutionality of a law requiring a plaintiff in a medical malpractice suit to submit a "certificate of merit" with the pleadings. 166 Wn.2d at 982-83. The court explained that "[t]he certificate of merit requirement essentially requires plaintiffs to submit evidence supporting their claims before they even have an opportunity to conduct discovery

and obtain such evidence." Putman, 166 Wn.2d at 983. Noting that the "right of access to courts 'includes the right of discovery authorized by the civil rules,'" Putman, 166 Wn.2d at 979 (quoting John Doe v. Puget Sound Blood Ctr., 117 Wn.2d 772, 780, 819 P.2d 370 (1991)), the court held that the certificate of merit requirement unconstitutionally limited a litigant's access to the courts. Putman, 166 Wn.2d at 985.

Fitzgerald, 172 Wn. App. at 449 n.8. However, we declined to interpret Putman so broadly as to render unconstitutional any statute that limits discovery.

Unlike the situation in Putman, however, in the context of a TEDRA[10] proceeding, no decision disposing of the creditor's claim is mandated before any discovery can be had. The trial court retains the discretion to permit discovery—in appropriate circumstances—before determining whether the creditor's claims are time-barred. Accordingly, unlike the certificate of merit requirement in a medical malpractice suit, the TEDRA discovery rules do not unconstitutionally limit a creditor's access to the courts.

Fitzgerald, 172 Wn. App. at 449-50 n.8.

As in the context of a TEDRA proceeding, trial courts retain the discretion to permit discovery before ruling on an anti-SLAPP motion. Thus, the non-movant in an anti-SLAPP motion will not categorically be precluded from obtaining discovery before the trial court rules on the motion. So long as the non-movant can show good cause to obtain discovery, the trial court should allow such discovery. RCW 4.24.525(5)(c). Therefore, the discovery stay does not violate the Members' right of access to the courts.

The Members finally aver that the discovery stay is unconstitutional as applied here. This is so, they assert, because "[t]he trial court effectively read the good cause requirement out of the statute by finding the anti-SLAPP Act's 'governing principle . . . [is] to avoid the time and expense of litigation, including

---

[10] Trust and Estate Dispute Resolution Act, ch. 11.96A RCW.

discovery,' and that, as a result, Appellants had to acquire all necessary information before filing suit." Appellant's Br. at 38. However, as explained above, the trial court applied the correct legal standard in ruling on the Members' discovery motion. Their assertion to the contrary, supported by selectively culling language from the trial court's examination of legislative intent, does not warrant a grant of appellate relief.

B

The Members also argue that the requirement that they establish by clear and convincing evidence a probability of prevailing on their claim is unconstitutional. They first contend that this heightened burden violates separation of powers principles. This is so, they assert, because the heightened burden of proof conflicts with CRs 8, 11, 12, 15, and 56. However, because burdens of proof are substantive, not procedural, the Members are incorrect.

"When a court rule and a statute conflict, the court will attempt to harmonize them, giving effect to both." Jensen, 158 Wn.2d at 394. However, if a statute and a court rule "cannot be harmonized, the court rule will prevail in procedural matters and the statute will prevail in substantive matters." Putman, 166 Wn.2d at 980.

"Given its importance to the outcome of cases, we have long held the burden of proof to be a 'substantive' aspect of a claim." Raleigh v. Ill. Dep't of Revenue, 530 U.S. 15, 20-21, 120 S. Ct. 1951, 147 L. Ed. 2d 13 (2000).

Even were we to decide that a conflict between the statute and the cited court rules actually exists, a decision we need not make, the Members would not

prevail on their claim that the statute violates the separation of powers. If such conflicts do exist, the statute must prevail, as burdens of proof are substantive aspects of a claim. Thus, the heightened burden of proof does not violate separation of powers principles.

The Members next contend that the heightened burden of proof violates the right of access to the courts. This is so, they assert, because "it permits claims to be dismissed with prejudice based on a burden of proof greater than that the claimant would face at trial, and without the claimant having acquired the discovery needed to establish its case." Appellant's Br. at 41. This contention is unavailing.

"It is entirely within the Legislature's power to define parameters of a cause of action and prescribe factors to take into consideration in determining liability." Sofie v. Fibreboard Corp., 112 Wn.2d 636, 666, 771 P.2d 711, 780 P.2d 260 (1989). "The argument that a state statute stiffens the standard of proof of a common law claim does not implicate" the right of access to courts. Garcia v. Wyeth-Ayerst Labs., 385 F.3d 961, 968 (6th Cir. 2004). The legislature has the prerogative to impose a heightened burden of proof.[11] Its choice to do so here does not violate the Members' right of access to the courts.

---

[11] Indeed, our legislature has utilized a straightforward "clear and convincing evidence" burden of proof in other contexts. See RCW 4.24.730(3) (presumption of good faith for employer's disclosure of employee information rebuttable only on showing of "clear and convincing evidence"); RCW 5.68.010(2) (journalist work-product may be compelled only if "the party seeking such news or information" shows its relevance and unavailable alternatives "by clear and convincing evidence"); RCW 13.34.190(1)(a)(i) ("[T]he court may enter an order terminating all parental rights to a child only if the court finds . . . [t]he allegations contained in the petition . . . are established by clear, cogent, and convincing evidence."). Our courts have also approved of this heightened burden of proof in the defamation context. See Mark v. Seattle Times, 96 Wn.2d 473, 487, 635 P.2d 1081 (1981) (requiring "that a defamation plaintiff resisting a

- 27 -

The Members next contend that the requirement that they establish by clear and convincing evidence a probability of prevailing on their claims violates their right to a jury trial. We disagree.

Our recent decision in Dillon explained that the standard of clear and convincing evidence of a probability of prevailing on the claim is applied by viewing the evidence in a manner similar to how it is viewed in deciding a summary judgment motion. Dillon, 316 P.3d at 1142. We concluded that the summary judgment standard does not offend the constitutional right to a trial by jury and, therefore, the anti-SLAPP statute also does not offend this right.

> The summary judgment standard does not offend the constitutional right to trial by jury because "it was not the purpose of [article I, section 21] to render the intervention of a jury mandatory . . . where no issue of fact was left for submission to, or determination by, the jury." . . .
> Accordingly, the anti-SLAPP statute does not violate the right to trial by jury where the court utilizes a summary judgment-like standard in deciding the motion to strike.

Dillon, 316 P.3d at 1142 (quoting In re Brandon v. Webb, 23 Wn.2d 155, 159, 160 P.2d 529 (1945); citing Nexus v. Swift, 785 N.W.2d 771, 782 (Minn. App. 2010)).

The Members next argue that the requirement that they establish by clear and convincing evidence a probability of prevailing on their claims is unconstitutionally vague. This is so, they assert, because the standard mixes two standards of proof, such that there is a significant likelihood that the more rigorous standard—clear and convincing evidence—will be applied without

---

defense motion for summary judgment must establish a prima facie case by evidence of convincing clarity").

reference to the more relaxed standard of probability of prevailing on the claim. We disagree.

"The party challenging a statute's constitutionality on vagueness grounds has the burden of proving its vagueness beyond a reasonable doubt." Haley v. Med. Disciplinary Bd., 117 Wn.2d 720, 739, 818 P.2d 1062 (1991). "A statute is void for vagueness if it is framed in terms so vague that persons 'of common intelligence must necessarily guess at its meaning and differ as to its application.'" Haley, 117 Wn.2d at 739 (quoting Connally v. Gen. Constr. Co., 269 U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322 (1926)). Yet, "[c]ondemned to the use of words, we can never expect mathematical certainty." Grayned v. City of Rockford, 408 U.S. 104, 110, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972).

The Members admit that both the "clear and convincing" standard[12] and the "probability" standard are common standards, but then conclude that the two together will confound persons of common understanding. This is a non sequitur. Since both standards are well known, there seems to be little risk that, when considered together, confusion will abound. The Members have failed to demonstrate beyond a reasonable doubt that this statutory standard is unconstitutionally vague.

The last of the Members' constitutional challenges is that the clear and convincing evidence of a probability of prevailing on the claim standard is unconstitutional as applied to them. This is so, they assert, because this

---

[12] The United States Supreme Court has provided guidance in applying the convincing clarity standard: "in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

statutory standard exceeds the burden of proof that they would face at trial or any other dispositive motion. However, because—at the motion stage—the trial court must credit the evidence presented by the plaintiffs, it is not true that the same quantum of evidence that would prevail at trial might not prevail in opposing the motion, as feared by the Members. The heightened burden, therefore, was not unconstitutional as applied to them.

VI

The Members next contend that the trial court erred by awarding $10,000 in statutory damages to each defendant. This is so, they assert, because the suit was a derivative suit brought against the board, not 16 individuals. We disagree.

RCW 4.24.525(6)(a)(ii) mandates that a moving party who prevails on an anti-SLAPP motion be awarded ten thousand dollars.

> (6)(a) The court shall award to a moving party who prevails, in part or in whole, on a special motion to strike made under subsection (4) of this section, without regard to any limits under state law:
>
> . . .
>
> (ii) An amount of ten thousand dollars, not including the costs of litigation and attorney fees.

RCW 4.24.525(6)(a)(ii).

Recently, we interpreted RCW 4.24.525(6)(a)(ii) and stated, in no uncertain terms, "all persons who prevail on an anti-SLAPP motion filed on their behalf are entitled to the statutory damage award." Akrie v. Grant, ___ Wn. App. ___, 315 P.3d 567, 571 (2013). In reaching this conclusion, we relied on the legislature's statement that "'[t]his act shall be applied and construed liberally to effectuate its general purpose of protecting participants in public controversies

- 30 -

from an abusive use of the courts.'" Akrie, 315 P.3d at 571 (quoting LAWS OF 2010, ch. 118, § 3).

In view of our pronouncement in Akrie, we must determine whether all 16 board members prevailed or whether it was only the board of directors as a single unit that prevailed. Put differently, did the Members sue each director individually or the board as a single entity? Without citation to authority, the Members aver that they named the individual members as defendants only because "court rules and statutes required them to do so." Appellant's Br. at 48. Additionally, the Members assert, they "made no allegations against any particular defendant; their complaint focused entirely on the actions of the Board." Appellant's Br. at 48. Their requested relief once again belies their position on appeal. Tellingly, the Members' complaint sought monetary damages from all 16 board members. This fact demonstrates that the Members sued the 16 board members individually, seeking monetary recompense from each. Thus, when the board members prevailed on the anti-SLAPP motion, they were each entitled to receive the statutorily-mandated $10,000 award.

The Members, nevertheless, argue that the Directors should not each receive the statutory damage award, reasoning that—even in the event that the Members had prevailed in the trial court—the Directors would have been indemnified by the Co-op as provided for by the bylaws, meaning that they never faced a serious threat of being held financially responsible. Although the Members are correct that the bylaws authorize indemnification for directors, they overlook the requirement that directors must act in good faith and in the interests

of the Co-op in order for indemnification to be available. Because the Members argue at length that the Directors failed, in fact, to act in good faith and in the interests of the Co-op, their indemnification argument is, at best, disingenuous. Akrie establishes that each defendant was entitled to the statutory damage award. There was no error.

VII

The Members next contend that the Co-op, as the real party in interest, should pay the attorney fees awarded to the Directors by the trial court. In support of this assertion, they cite to the statutes governing derivative actions for for-profit and for non-profit entities, RCW 23B.07.400[13] and RCW 24.03.040,[14] and argue that because neither statute authorizes fees against them as representative plaintiffs, they conflict with the anti-SLAPP statute.

"We review the legal basis for an award of attorney fees de novo and the reasonableness of the amount of an award for abuse of discretion." Hulbert v. Port of Everett, 159 Wn. App. 389, 407, 245 P.3d 779 (2011).

Without deciding whether the anti-SLAPP statute does, in fact, conflict with these derivative action statutes, we conclude that the legislature's intent in mandating an award of litigation costs and attorney fees to the prevailing party was clearly expressed by the plain language of the statute: "The court shall award to a moving party who prevails . . . *without regard to any limits under state law* . . . [c]osts of litigation and any reasonable attorneys' fees incurred in

---

[13] Under the for-profit statute, a court may award fees against an unsuccessful representative plaintiff only if the court finds that there was no "reasonable cause" for the proceeding. RCW 23B.07.400(4).

[14] The non-profit statute does not expressly authorize an award of fees. RCW 24.03.040.

connection with each motion on which the moving party prevailed." RCW 4.24.525(6)(a)(i) (emphasis added). Accordingly, even if a conflict existed, the anti-SLAPP statute would control. Therefore, the trial court did not err by assigning the liability for financial recompense to the Members.[15]

## VIII

The Directors request their attorney fees on appeal. "The court shall award to a moving party who prevails, in part or in whole . . . [c]osts of litigation and any reasonable attorneys' fees incurred in connection with each motion on which the moving party prevailed." RCW 4.24.525(6)(a)(i). Additionally, "where a prevailing party is entitled to attorney fees below, they are entitled to attorney fees if they prevail on appeal." Sharbono v. Universal Underwriters Ins. Co., 139 Wn. App. 383, 423, 161 P.3d 406 (2007). Thus, the Directors' request is well taken. Upon compliance with RAP 18.1, a commissioner of this court will enter an appropriate order.

Affirmed.

We concur:

---

[15] The Members, in passing, also assert that the representative nature of their presence in this lawsuit requires the Co-op, and not them, to be held liable for the statutory damages award. However, because the Members fail to support this assertion with citation to legal authority, we do not consider it. See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).