IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| TERRY HOY, an individual, | No. 79666-6-I |
| Appellant, | DIVISION ONE |
| v. | |
| THE 400 CONDOMINIUM ASSOCIATION, a Washington nonprofit corporation, | UNPUBLISHED OPINION |
| Respondent. | FILED: July 1, 2019 |

CHUN, J. — After Terry Hoy purchased his condominium (Unit), he sought approval from The 400 Condominium Association (Association) Board of Directors to install a heat pump (HVAC System). The Board agreed to allow Hoy to install the HVAC System on the condition that he sign a document to protect the Association. The parties dispute whether Hoy said he would sign any document or only a Memorandum of Understanding (MOU).

Hoy installed his HVAC System before he and the Board finalized an agreement. After consulting with an attorney, the Board sent Hoy a covenant to sign. Hoy refused, claiming that he had agreed to sign only an MOU. The Board took steps to remove Hoy's HVAC System.

Hoy then filed this action against the Association for breach of duty of ordinary and reasonable care and promissory estoppel. The trial court granted the Association's motion for summary judgment on both claims and awarded it

attorney fees under the Condominium Act.[1] Even when viewing the facts in the light most favorable to Hoy, both claims fail. We affirm.

I.
BACKGROUND

Hoy owns a Unit located within The 400 Condominium complex. The Condominium Declaration governs the properties within the complex and the Association, which manages it. Hoy wanted to modify his Unit by installing an HVAC System. Because the installation would require Hoy to cut through an exterior wall (a "common element") and the HVAC System would sit on his outside patio (a "limited common element"), the Declaration required him to obtain approval from the Association's Board of Directors.[2]

In the summer of 2014, Hoy submitted to the Board a request to install an HVAC System. The request noted, "As I understand it, this will be the first add-on HAVAC [sic] for the 400 Condominiums." The Board chose to wait to respond to Hoy's request until after it had researched potential noise and appearance issues.

Almost a year later, on June 17, 2015, Hoy attended a board meeting[3] at which the Board approved his request with the condition that he sign a forthcoming, binding agreement. The Board decided to "draft a Memo of Understanding (MOU) for any tenant who wishes to install [an HVAC System]." It

_____

[1] RCW 64.34 et seq.

[2] The Declaration provides the Association and Board broad powers over common and limited common elements. Common elements constitute all portions of the 400 Condominium complex aside from the property owners' individual units. Limited common elements are the portions of the common elements that one or more, but fewer than all, of the property owners may exclusively use.

[3] In February 2015, Hoy became a member of the Board.

further stated that Hoy would sign the MOU before his scheduled installation if it was available. Otherwise, Hoy would sign after installing his HVAC System. The parties intended the MOU to constitute a binding agreement. Although the board minutes discuss only the MOU, the Association submitted declarations attesting that Hoy agreed to sign any type of document the Board chose to require.

Hoy then installed an HVAC System. The parties present conflicting evidence as to whether Hoy began installing his HVAC System before or after the Board gave its conditional approval. The parties do not dispute, however, that Hoy did not sign any agreement prior to installation, as the Board did not have one ready.

During a meeting on July 15, 2015, the Board discussed each item in a draft MOU. At a meeting on September 16, 2015, the Board approved minor changes to the MOU and decided to have an attorney review it.

A year later, at a September 2016 meeting, the Board discussed how to protect the Association from liability when a property owner installs an HVAC System; it considered whether it should move forward with an MOU, a covenant, or an amendment to the Declaration. At the next meeting a month later, the Board elected to follow legal advice and use a covenant:

> Legal counsel has responded to question in regard to what is the best way to protect the condo association on this issue: Memo of Understanding? Covenant? Or is it already covered by the declaration? Counsel opined that covenant would be the best protection for the association for new HVAC. However, the covenant would not apply to units that had HVAC installed during construction of the building.

A board member then moved to have "counsel complete the legal technicalities for the covenant between the association and Terry Hoy."

On December 14, 2016, the Association sent a letter to Hoy asking him to sign the enclosed covenant. Hoy refused.

In March 2017, the Board held a hearing on whether it should use its authority under the Declaration to enter Hoy's Unit and remove the HVAC System. Hoy's attorney represented him at the meeting. The Board chose to take steps towards removal.

On April 17, 2017, the Association sent Hoy an MOU with the same language as the covenant, but Hoy again refused to sign. The next day, the Board sent Hoy a letter notifying him that it had decided to remove his HVAC System.

Hoy then filed this lawsuit against the Association on May 18, 2017. He claimed breach of duty of ordinary and reasonable care and promissory estoppel. The same day, Hoy also moved for a preliminary injunction to stop the Association from removing his HVAC System. The trial court granted Hoy's motion on June 2, 2017.

The Association moved for summary judgment on December 15, 2017. On January 29, 2018, the court granted the Association's motion and dismissed Hoy's claims.

On April 11, 2018, the Association requested attorney fees and costs pursuant to RCW 64.34.455. The court ordered Hoy to pay the Association $13,277.50 in fees and costs.

Hoy appeals.

## II.
## ANALYSIS

We review de novo a trial court's decision to grant summary judgment. Modumetal, Inc. v. Xtalic Corp., 4 Wn. App. 2d 810, 822, 425 P.3d 871 (2018). Courts grant summary judgment if no genuine issue exists as to any material fact. Modumetal, 4 Wn. App. 2d at 822. Courts draw all facts and reasonable inferences in the light most favorable to the nonmoving party. Modumetal, 4 Wn. App. 2d at 822. A court should grant summary judgment if reasonable people could reach only one conclusion. Modumetal, 4 Wn. App. 2d at 822-23.

A. Duty of Ordinary and Reasonable Care

Hoy argues the Association breached its duty to exercise ordinary and reasonable care by "[a]ttempting to force an association member to execute a covenant recordable against the member's unit as a condition for that member to be able to continue his use of a [Board]-approved modification to the member's unit." The Board claims the business judgment rule protects its decision. We agree with the Board.

When the unit members of a condominium association elect the officers and members of the board of directors, the Condominium Act requires those officers and members to exercise ordinary and reasonable care in performing

5

their duties. RCW 64.34.308(1). Whether a board member exercises ordinary and reasonable care under particular circumstances generally constitutes a question of fact. See Hertog v. City of Seattle, 138 Wn.2d 265, 275, 979 P.2d 400 (1999). Courts may dismiss a claim on summary judgment in the absence of an issue of fact as to reasonableness. See Cascade Auto Glass, Inc., v. Progressive Cas. Ins. Co., 135 Wn. App. 760, 767-71, 145 P.3d 1253 (2006).

The business judgment rule protects the decisions made by a board tasked with managing a corporation. Davis v. Cox, 180 Wn. App. 514, 535, 325 P.3d 255 (2014), rev'd on other grounds, 183 Wn.2d 269, 351 P.3d 862 (2015). "Courts also apply the business judgment rule to actions of an owners association." Shorewood W. Condo. Ass'n v. Sadri, 92 Wn. App. 752, 757, 966 P.2d 372 (1998) rev'd on other grounds, 140 Wn.2d 47, 992 P.2d 1008 (2000). "[T]he rule not only requires directors to act with 'good faith,' but also requires them to act with such care as an ordinarily prudent person in a like position would use under similar circumstances." Shinn v. Thrust IV, Inc., 56 Wn. App. 827, 833, 786 P.2d 285 (1990). Thus, under the rule, "a court will not substitute its judgment for that of [the board members] '[u]nless there is evidence of fraud, dishonesty, or incompetence (i.e., *failure to exercise proper care, skill, and diligence*)[.]'" Riss v. Angel, 131 Wn.2d 612, 632, 934 P.2d 669 (1997) (quoting In re Spokane Concrete Prods., Inc., 126 Wn.2d 269, 279, 892 P.2d 98 (1995)).

Here, the Declaration provides the Board with broad powers ("the Board may exercise all powers of the Association, except as otherwise provided in the

6

Condominium Act, Declaration, or the Bylaws"). Additionally, RCW 64.34.304 grants virtually identical powers to the Board. These powers include the ability to "[r]egulate the use, maintenance, repair, replacement, and modification of Common Elements and Limited Common Elements." See also RCW 64.34.304(1)(f) (stating a board has power to regulate common elements). To "regulate" means "to bring under the control of law or constituted authority: make regulations for or concerning." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1913 (2002). Because installing an HVAC System requires the use of common and limited common elements, the Board has the power to make rules for installing such units. This power, however, is not unlimited, as the Board must exercise ordinary and reasonable care in carrying out its duties.

We determine the business judgment rule protects the Board's decision as a matter of law. First, the record lacks any evidence that the Board did not act in good faith. Though Hoy contends that the Board treated him differently from other property owners with HVAC Systems, this argument lacks merit because of the different circumstances surrounding the HVAC Systems. The other HVAC Systems had been installed during construction. The board minutes clearly demonstrate that the Board never intended owners with HVAC Systems installed during construction to sign any document—MOU, covenant, or otherwise. In contrast, Hoy was admittedly the first to install an add-on HVAC System. As such, the Board's treatment of Hoy does not demonstrate bad faith.

Second, the Board acted as a reasonably prudent board of directors would under like circumstances, without evidence of fraud, dishonesty, or incompetence. Hoy knew that the Board—in making efforts to develop an agreement with homeowners seeking to install HVAC Systems—prioritized protecting the Association. Hoy further accepted the risk of installing his HVAC before knowing of all the Association's proposed terms. The Board exercised proper care, skill, and diligence by seeking legal advice to create an agreement for HVAC System installations. It then followed the advice that a covenant would best protect the Association. The Board acted reasonably and in good faith. Therefore, the business judgment rule protects its decisions regardless of the factual disputes that Hoy identifies—i.e., whether Hoy installed the HVAC system before or after the Board gave its approval and whether he originally agreed to sign any document or only an MOU. Thus, the disputed facts do not preclude summary judgment on this issue.

Because the business judgment rule protects the Board's decision to require Hoy to sign the covenant or remove the HVAC System, we will not second-guess its actions. See Davis, 180 Wn. App. at 535; Shorewood, 92 Wn. App. at 757. We conclude that the trial court properly granted summary judgment in the Board's favor on Hoy's breach of duty claim.

B. Promissory Estoppel

Hoy next argues the trial court erred by dismissing his promissory estoppel claim because he meets all of the required elements. According to the

8

Association, the claim fails because it granted Hoy a revocable license which cannot be enforced through promissory estoppel. We conclude that the trial court properly dismissed the claim.

Courts may use the promissory estoppel doctrine to enforce a promise made without mutual assent or consideration. Havens v. C & D Plastics, Inc., 124 Wn.2d 158, 173, 876 P.2d 435 (1994). To prevail on a claim for promissory estoppel, a plaintiff must prove five elements:

> (1) A promise which (2) the promisor should reasonably expect to cause the promisee to change [their] position and (3) which does cause the promisee to change [their] position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise.

Klinke v. Famous Recipe Fried Chicken, Inc., 94 Wn.2d 255, 259 n2, 616 P.2d 644 (1980). Under Washington law, however, a plaintiff cannot use promissory estoppel to enforce a revocable license. Hathaway v. Yakima Water, Light, & Power Co., 14 Wn. 469, 472, 44 P. 896 (1896) (a "parol license to be exercised upon the land of another creates an interest in the land . . . and may be revoked by the licensor at any time, no matter whether or not the licensee has exercised acts under the license, or expended money in reliance thereon"); see also Showalter v. City of Cheney, 118 Wn. App. 543, 549, 76 P.3d 782 (2003) ("Implicit in the nature of a license is the licensee's presumed knowledge that permission may be withdrawn. Consequently, funds expended in reliance on a mere license do not create a valuable, compensable property right.").

When determining whether a grantor conveyed a revocable license or a permanent property right, courts consider the evidence as a whole. See

9

Groeneveld v. Dean, 40 Wn.2d 109, 111, 241 P.2d 443 (1952). Additionally, the "presence of consideration is helpful," with a lack of consideration suggesting a revocable license. Lee v. Lozier, 88 Wn. App. 176, 183, 945 P.2d 214 (1997).

For condominiums, RCW 64.34.348(1) and (2) prohibit the conveyance of any permanent property right without an agreement executed in the same manner as a deed and ratified by the requisite number of unit owners. Neither requirement was satisfied here. Moreover, the Board did not support its approval of Hoy's installation with any consideration. As noted above, a lack of consideration suggests a revocable license. Thus, viewing the evidence as a whole, we determine as a matter of law that the Association granted Hoy a revocable license to use the common and limited common elements for his HVAC System.

Because the undisputed facts show that Hoy obtained a revocable license, he may not invoke the promissory estoppel doctrine. See Hathaway, 14 Wn. at 472; Showalter, 118 Wn. App. at 549. Thus, it again does not matter whether the trier of fact would resolve the factual disputes in Hoy's favor. Accordingly, the trial court properly granted summary judgment in favor of the Association on Hoy's promissory estoppel claim.

C. Attorney Fees

Both Hoy and the Association request attorney fees on appeal under the Condominium Act. RCW 64.34.455 provides for attorney fees to the prevailing party:

> If a declarant or any other person subject to this chapter fails to comply with any provision hereof or any provision of the declaration or bylaws, any person or class of persons adversely affected by the failure to comply has a claim for appropriate relief. The court, in an appropriate case, may award reasonable attorney's fees to the prevailing party.

"Where a statute authorizes fees to the prevailing party, they are available on appeal as well as in the trial court." Eagle Point Condo. Owners Ass'n v. Coy, 102 Wn. App. 697, 716, 9 P.3d 898 (2000).

Because the Association prevails on appeal, we award it such fees, subject to its compliance with RAP 18.1.

Affirmed.

Chun, J.

WE CONCUR: