# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

ALASKA STRUCTURES, INC., an
Alaska corporation,

            Appellant,

            v.

CHARLES J. HEDLUND,

            Respondent.

)
)
)
)
)
)
)
)
)
)
)

No. 69349-2-I

DIVISION ONE

PUBLISHED OPINION

FILED: April 21, 2014

GROSSE, J.P.T.[1] — To succeed on a special motion to strike under Washington's anti-SLAPP statute,[2] the moving party must make an initial prima facie showing that the claimant's suit arises from an act in furtherance of his right of petition or free speech in connection with a matter of public concern. If the movant does not meet that threshold, then the anti-SLAPP motion is dismissed. Here, the plaintiff, Alaska Structures, Inc., brought an action against the defendant, Charles Hedlund, for violating a confidentiality agreement. The gravamen of the complaint is not whether there was a violation of Hedlund's free speech rights, but rather, whether the parties' contract was violated. Because this is a private contractual matter, the anti-SLAPP statute does not apply. Accordingly, we reverse the trial court and remand for further proceedings.

## FACTS

From February 2007 to January 2010, Charles Hedlund worked as a sales coordinator at Alaska Structures, Inc. (AKS), a supplier of tents to the United States

---

[1] Judge C. Kenneth Grosse was a member of the Court of Appeals at the time oral argument was heard on this matter. He is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.
[2] Washington Act Limiting Strategic Lawsuits Against Public Participation.

military. In August 2011, Hedlund made several postings regarding AKS on an Internet jobsite forum, Indeed.com. Those postings were removed from the web site at AKS's request. Indeed.com is a web site designed to be a resource for job seekers. It includes job postings, salary averages, and a forum where employees and applicants can discuss a company's work environment. The web site is designed to allow job seekers to ask others about a company to aid in making a decision whether or not to work there. Hedlund claimed he made his comments to describe an accurate picture of AKS to prospective employees, and because he suspected that other postings on the web site describing AKS were made by employees masquerading as job seekers. Hedlund characterized the various postings regarding AKS as a debate among the parties posting. AKS has focused on one particular posting as providing the basis for its suit of breach of confidentiality. Hedlund wrote:

> [T]he security measures at AKS are all consumer-grade off the shelf fare installed by the former CIO, who had no prior security experience. . . . The cheap cameras provided no clues as to the identity of the thieves. That is why they now have the high-tech security precaution of human guards.

Hedlund denied having any special knowledge of security measures. While Hedlund was employed there, Dylan Schneider, the chief information officer (CIO) of AKS, installed software and security cameras. AKS knew that Schneider did not have any prior experience in deploying security measures.

Hedlund posted his comment after he had left AKS and after the AKS headquarters had been broken into. His comments were based on public information contained in police reports and newspapers.

2

Based on this posting, AKS sued Hedlund for breach of a confidentiality agreement. Hedlund argued that he was sued as a result of his postings to a web site, which is a public forum, and moved to dismiss the claim under the anti-SLAPP statute.

The trial court found the anti-SLAPP statute applied and that AKS was unable to demonstrate that its action for violation of the confidentiality agreement had any merit. The court awarded Hedlund requested attorney fees and a $10,000 penalty. AKS appeals.

## ANALYSIS

AKS argues that the trial court erred in determining that the contents of Hedlund's posting addressed issues of public concern. AKS further argues that even if this posting were of public concern, Hedlund violated the confidentially agreement he signed with AKS while in its employ.

In 2010, the Washington legislature expanded the protections embodied in RCW 4.24.525. In the preamble, the legislature stated the purpose of the new section:

> (a) It is concerned about lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances;
> (b) Such lawsuits, called "Strategic Lawsuits Against Public Participation" or "SLAPPs," are typically dismissed as groundless or unconstitutional but often not before the defendants are put to great expense, harassment, and interruption of their productive activities;
> (c) The costs associated with defending such suits can deter individuals and entities from fully exercising their constitutional rights to petition the government and to speak out on public issues;
> (d) It is in the public interest for citizens to participate in matters of public concern and provide information to public entities and other citizens on public issues that affect them without fear of reprisal through abuse of the judicial process; and
> (e) An expedited judicial review would avoid the potential for abuse in these cases.[3]

---

[3] LAWS OF 2010, ch. 118, § 1.

3

The act further provides that it "shall be applied and construed liberally to effectuate its general purpose of protecting participants in public controversies from an abusive use of the courts."[4] The anti-SLAPP statute provides relief to a defendant in the nature of immunity from suit.[5]

Pursuant to the anti-SLAPP act, a party may bring a special motion to strike any claim based on an oral statement or "[a]ny other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public concern, or in furtherance of the exercise of the constitutional right of petition." RCW 4.24.525(2)(e). Here, Hedlund was required to prove by a preponderance of the evidence that AKS's claim is based on a statement made in connection with an issue of public concern. RCW 4.24.525(4)(b).

In deciding an anti-SLAPP motion, a court must follow a two-step process.[6] We review a court's interpretation and application of the anti-SLAPP statue de novo.[7] The first prong of the analysis requires a court to review the parties' pleadings, declarations, and other supporting documents to determine whether the gravamen of the underlying claim is based on protected activity. A defendant filing an anti-SLAPP motion to strike must make an initial prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's right of petition or free speech.[8] If the substance or gravamen of the complaint does not challenge the defendant's acts in furtherance of the

---

[4] LAWS OF 2010, ch. 118, § 3; Akrie v. Grant, ___ Wn. App. ___, 315 P.3d 567, 571 (2013).
[5] Henne v. City of Yakima, 177 Wn. App. 583, 594-95, 313 P.3d 1188 (2013).
[6] Dillon v. Seattle Deposition Reporters, LLC, ___ Wn. App.___, 316 P.3d 1119, 1132 (2014).
[7] City of Seattle v. Egan, ___ Wn. App ___, 317 P.3d 568, 569 (2014).
[8] RCW 4.24.525(4)(b); see also Dillon, 316 P.3d at 1133.

right of free speech or petition, the court does not consider whether the complaint alleges a cognizable wrong or whether the plaintiff can prove damages.[9] In other words, Hedlund is required to make a threshold showing that each of AKS's claims is based on protected activity. AKS contends that the trial court erred when it concluded that Hedlund's postings on Indeed.com fell within the protected activity of the anti-SLAPP statute. AKS argues that the action involves a breach of contract claim and not free speech. We agree.

Here, the trial court made the following findings:

> The Court further finds that the speech at issue is a written statement submitted in a public forum in connection with an issue of public concern.

> The Court further finds that the matter concerns lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public concern, or in furtherance of the exercise of the constitutional right of petition.

But, what constitutes public concern must be viewed in the context of this act. Under the act, the legislature is "concerned about lawsuits" that deter participation in matters of public concern.[10] It created the special motion in RCW 4.24.525 to "[s]trike a balance between the rights of persons to file lawsuits . . . and the rights of persons to participate in matters of public concern."[11] But the legislature did not grant a party immunity from liability for the consequences of speech that is otherwise unlawful or unprotected.

Washington's anti-SLAPP statute mirrors California's anti-SLAPP statute. Accordingly, California cases may be considered persuasive authority when interpreting

---

[9] Dillon, 316 P.3d at 1139.
[10] LAWS OF 2010, ch. 118, § 1.
[11] LAWS OF 2010, ch. 118 § 1.

5

RCW 4.24.525.[12] California uses the term "public interest" while Washington uses "public concern." California courts have defined "public interest" as "any issue in which the public is interested."[13] As the district court noted in Stutzman v. Armstrong, "'[t]hose terms are inherently amorphous and thus do not lend themselves to a precise, all encompassing definition.'"[14] We are reminded of Justice Potter Stewart's famous definition of "pornography," "I know it when I see it" and we see no discernible difference in the two terms.[15]

In Cross v. Cooper, the California court noted that its courts adopted a framework of categories for determining whether a statement implicates an issue of public interest and falls within the protection of the anti-SLAPP statute:

> The first category comprises cases where the statement or activity precipitating the underlying cause of action was "a person or entity in the public eye." The second category comprises cases where the statement or activity precipitating the underlying cause of action "involved conduct that could affect large numbers of people beyond the direct participants." And the third category comprises cases where the statement or activity precipitating the claim involved "a topic of widespread, public interest."[16]

It is true that in applying those categories, several California cases have found that consumer information posted on web sites concern issues of public interest. See, e.g.,

---

[12] Compare RCW 4.24.525 with Cal. Civ. Proc. Code § 425.16. See City of Longview v. Wallin, 174 Wn. App. 763, 776 n.11, 301 P.3d 45, rev. denied, 178 Wn.2d 1020, 312 P.3d 650 (2013).

[13] Nygard, Inc. v. Uusi-Kerttula, 159 Cal. App. 4th 1027, 1042, 72 Cal. Rptr. 3d 210 (2008).

[14] No. 2:13-CV-00116, 2013 WL 4853333, at *5 (E.D. Cal. 2013) (quoting E Clampus Vitus v. Steiner, 2:12-CV-01381, 2012 WL 6608612 (E.D. Cal. 2012)).

[15] Jacobellis v. State of Ohio, 378 U.S. 184, 197, 84 S. Ct. 1676, 12 L. Ed. 2d 793 (1964) (Stewart, J., concurring).

[16] 197 Cal. App. 4th 357, 373, 127 Cal. Rptr. 3d 903 (2011) (footnotes and citations omitted) (quoting Rivero v. American Fed'n of State, County, and Mun. Emps., AFL-CIO, 105 Cal. App. 4th 913, 924, 130 Cal. Rptr. 2d 81 (2003)).

Gilbert v. Sykes[17] (holding patient's statements about a plastic surgeon were of public interest because the information provided was material to potential consumers "contemplating plastic surgery"); Wong v. Tai Jing[18] (review on Yelp, Inc. criticizing dental services and discussing the use of silver amalgam raised issues of public interest). Similarly, the Ninth Circuit in Makaeff v. Trump University, LLC,[19] held that "[u]nder California law, statements warning consumers of fraudulent or deceptive business practices constitute a topic of widespread public interest, so long as they are provided in the context of information helpful to consumers."

Hedlund argues that these cases support his activity as protected because his postings were meant to alert prospective employees to his opinions and experience with AKS and to alert them to potentially fraudulent postings by employees of AKS posing as new applicants. But consumers of products are in a special class of protection and we are not inclined to extend that same protection to someone who signed a confidentiality agreement potentially limiting his right to speak on certain issues.

Hedlund analogizes his postings to "consumer information" of public concern. He relies on several California cases. For example, in Wilbanks v. Wolk, the defendant, a consumer watchdog, warned people on her web site to "[b]e very careful when dealing" with the plaintiff, a settlement broker, because the plaintiff "provided incompetent advice" and was "unethical."[20] In holding the statements to be protected activity under the anti-SLAPP statute, the Wilbanks court noted that "[m]embers of the public . . . clearly have an interest in matters which affect their roles as consumers, and peaceful

---

[17] 147 Cal. App. 4th 13, 23, 53 Cal. Rptr. 3d 752 (2007).
[18] 189 Cal. App. 4th 1354, 117 Cal. Rptr. 3d 747 (2010).
[19] 715 F.3d 254, 262 (9th Cir. 2013).
[20] 121 Cal. App. 4th 883, 890-91, 17 Cal. Rptr. 3d 497 (2004).

activities, which inform them about such matters are protected by the First Amendment."[21] The <u>Wilbanks</u> court noted that the statements at issue "were not simply a report of one broker's business practices, of interest only to that broker and to those who had been affected by those practices," but rather were a warning not to use those services and thus were made "[i]n the context of information ostensibly provided to aid consumers choosing among brokers," making the statements an issue of public concern.[22]

But, we believe the situation here to be more akin to <u>World Financial Group, Inc. v. HBW Insurance & Financial Services, Inc.</u>[23] There, the plaintiff sued a competing business and its agents for misappropriating trade secrets and using confidential information to solicit customers and employees.[24] HBW and the former World Financial Group employees filed a special motion to strike under California's statute, claiming their conduct was of public interest because it involved workforce mobility, free competition, and the pursuit of employment.[25] In affirming the trial court's finding that the complaint was not subject to the anti-SLAPP statute, the court rejected the argument that the communications were meant to aid consumers in "the pursuit of lawful employment" and to aid "workforce mobility and free competition."[26] The court rejected the arguments because the communications themselves were not about any broad social topics, or made to inform the public, but "were merely solicitations of a

---

[21] 121 Cal. App. 4th at 899 (quoting <u>Paradise Hill Assocs. v. Procel</u>, 235 Cal. App. 3rd 1528, 1544, 1 Cal. Rptr. 514 (1991)).
[22] 121 Cal. App. 4th at 900.
[23] 172 Cal. App. 4th 1561, 92 Cal. Rptr. 3d 227 (2009).
[24] <u>World Fin. Grp.</u>, 172 Cal. App. 4th at 1564-66.
[25] <u>World Fin. Grp.</u>, 172 Cal. App. 4th at 1566-67.
[26] <u>World Fin. Grp.</u>, 172 Cal. App. 4th at 1569.

competitor's employees and customers undertaken for the sole purpose of furthering a business interest."[27] World Financial Group is more closely aligned to the case here.[28]

Furthermore, such a holding is in line with California's more restrictive tests set forth in Weinberg v. Feisel:[29]

> The statute does not provide a definition for "an issue of public interest," and it is doubtful an all-encompassing definition could be provided. However, the statute requires that there be some attributes of the issue which make it one of public, rather than merely private, interest. A few guiding principles may be derived from decisional authorities. First, "public interest" does not equate with mere curiosity. (Time, Inc. v. Firestone, supra, 424 U.S. [448, 454–455,] 96 S.Ct. at pp. 965–966, 47 L.Ed.2d [154, 163 (1976)]; Briscoe v. Reader's Digest Association, Inc., (1971) 4 Cal.3d 529, 537, 93 Cal.Rptr. 866, 483 P.2d 34.)] Second, a matter of public interest should be something of concern to a substantial number of people. (Dun & Bradstreet v. Greenmoss Builders, supra, 472 U.S. [749, 762, 105 S.Ct. 2939, 2947, 86 L.Ed.2d 593, 604 (1985).)] Thus, a matter of concern to the speaker and a relatively small, specific audience is not a matter of public interest. (Ibid.; Hutchinson v. Proxmire (1979) 443 U.S. 111, 135, 99 S.Ct. 2675, 2688, 61 L.Ed.2d 411, 431.) Third, there should be some degree of closeness between the challenged statements and the asserted public interest (Connick v. Myers (1983) 461 U.S. 138, 148–149, 103 S.Ct. 1684, 1690–1691, 75 L.Ed.2d 708, 720–721); the assertion of a broad and amorphous public interest is not sufficient ( Hutchinson v. Proxmire, supra, 443 U.S. at p. 135, 99 S.Ct. at p. 2688, 61 L.Ed.2d at p. 431). Fourth, the focus of the speaker's conduct should be the public interest rather than a mere effort "to gather ammunition for another round of [private] controversy. . . ." ( Connick v. Myers, supra, 461 U.S. at p. 148, 103 S.Ct. at p. 1691, 75 L.Ed.2d at p. 721.) Finally, "those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure." ( Hutchinson v. Proxmire, supra, 443 U.S. at p. 135, 99 S.Ct. at p. 2688, 61 L.Ed.2d at p. 431.)

---

[27] World Fin. Grp., 172 Cal. App. 4th at 1572.

[28] World Fin. Grp., is consistent with the United States Supreme Court's decision in Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S. 749, 105 S. Ct. 2939, 86 L. Ed. 2d 593 (1985). Dun & Bradstreet similarly dealt with a lawsuit regarding commercial activities by a private business about a private business directed to other private businesses: a private agency issuing a credit report to five subscribers about the bankruptcy of another business.

[29] 110 Cal. App. 4th 1122, 1132, 2 Cal. Rptr. 3d 385 (2003), cited with approval in Hilton v. Hallmark Cards, 599 F.3d 894, 906 (9th Cir. 2010)).

We must adhere to the legislature's policy that the purpose of the anti-SLAPP statute is to strike a balance between the right of the person to file a lawsuit and that person's right to a jury trial and the rights of people to participate in "matters of public concern." On these facts that balance leads us to the conclusion that the postings cannot be deemed protected activity. This is particularly true where the complaint alleges Hedlund voluntarily limited his right to speak freely by signing a confidentiality agreement. The issue here is a simple contractual issue—whether or not Hedlund violated a contract he signed with his former employer.

Our ruling is limited to our conclusion that Hedlund does not meet the threshold standard for application of the statute and does not in any way preclude the trial court from determining the sufficiency of the complaint for breach of contract on summary judgment. The issue of whether Hedlund violated the confidentiality agreement may well lend itself to summary judgment dismissal, and Hedlund may be entitled to attorney fees under that contract. However, those issues are not before us and we hold only that the trial court erred in striking AKS's pleadings under the anti-SLAPP statute.

Reversed and remanded.

WE CONCUR:

10