# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE BASEBALL CLUB OF TACOMA, a Washington limited liability company, | ) ) ) | NO. 71792-8-I |
| | ) | DIVISION ONE |
| Respondent, | ) ) | |
| v. | ) ) | |
| SDL BASEBALL PARTNERS, LLC, a Nevada limited liability company, ROBERT J. SCHLEGEL and ROBERT K. SCHLEGEL, | ) ) ) ) ) | |
| | ) | PUBLISHED OPINION |
| Appellants, | ) ) | FILED: May 4, 2015 |
| and | ) ) | |
| MIKAL THOMSEN and AARON ARTMAN, | ) ) ) | |
| Respondents. | ) ) | |

LAU, J. — After purchasing the Tacoma Rainiers minor league baseball team from SDL Baseball Partners LLC (SDL),[1] The Baseball Club of Tacoma (TBCOT) filed a complaint alleging, among other things, breach of contract and fraud. SDL filed several counterclaims and third party claims. TBCOT responded with a special motion to strike

---

[1] We refer to SDL Baseball Partners LLC and the Schegels as SDL in this opinion.

these claims under Washington's anti-SLAPP statute.[2] The trial court granted the motion, concluding that the counterclaims and third party claims "tread" on TBCOT's complaint. But because the thrust or gravamen of SDL's counterclaims and third party claims relies primarily on alleged prelitigation conduct—rather than TBCOT's complaint—we conclude that TBCOT failed to establish that SDL's counterclaims were "based on" protected activity and reverse and remand with instructions to reinstate SDL's counterclaims and third party claims.

## FACTS

This case involves a contract dispute. In 2010, SDL Baseball Partners LLC, Robert J. Schlegel, and Robert K. Schlegel, decided to sell the Tacoma Rainiers[3] and assets related to the team and stadium. The Baseball Club of Tacoma, led by Mikal Thomsen (third party defendant below), offered to buy the team, and the parties signed a purchase and sale agreement on January 31, 2011. Under the agreement, the purchase price included a $16,500,000 payment to be made at closing and a percentage of the Rainiers' earnings before interest, taxes, depreciation, and amortization in the first four fiscal years with the option to extend for an additional fifth year. These additional payments are known as "Earn-Out" payments.

The agreement also stated that TBCOT "shall rely" on SDL's financial statements, "which need not be audited." Clerk's Papers (CP) at 511. SDL represented the truth and accuracy of those statements and warranted that they had been prepared in conformity with generally accepted accounting principles (GAAP). The agreement

---

[2] Washington Act Limiting Strategic Lawsuits Against Public Participation.

[3] The "Tacoma Rainiers" is a minor league baseball team that plays in the Pacific Coast League and is the Triple-A affiliate of the Seattle Mariners.

required that SDL reimburse TBCOT for any damages resulting from "any breach of any representation or warranty made in . . . this Agreement." CP at 396.

After acquiring the Rainiers, TBCOT discovered alleged accounting errors and errors in SDL's financial statements. For instance, TBCOT claimed that SDL failed to prepare their financials in conformity with GAAP, as represented in the purchase agreement, and financial statements misrepresented the financial performance of the business.

TBCOT filed suit against SDL in July 2012, alleging breach of contract, breach of implied duty of good faith and fair dealing, fraud, and negligent misrepresentation. SDL filed their initial answer and counterclaims in August 2012. The counterclaims requested a declaratory judgment limiting TBCOT's remedy to the terms of the agreement and alleging that TBCOT's fraud claim was frivolous and advanced without reasonable cause under RCW 4.84.185. In September 2013, SDL filed an amended answer and asserted affirmative defenses and counterclaims. SDL also alleged third party claims against TBCOT officers Mikal Thomsen and Aaron Artman. SDL asserted five new counterclaims in addition to the two previously alleged—breach of duty of good faith and fair dealing, fraud (fraud in the inducement, fraud by omission), negligent misrepresentation, civil conspiracy, and conversion.

In February 2014, TBCOT and third party defendants filed a special motion to strike SDL's counterclaims[4] pursuant to RCW 4.24.525, Washington's anti-SLAPP statute. TBCOT argued that SDL's "claims are based entirely on TBCOT's filing of this

_____

[4] In response to the special motion to strike, SDL voluntarily dismissed without prejudice its counterclaim that TBCOT's fraud claim was frivolous.

lawsuit . . . ," and because defendants could not show a probability of prevailing on their claims, those claims should be dismissed. The trial court granted the motion to strike, explaining that "the thrust of the counterclaims and third party complaints do tread on protected activity, that being the filing of the lawsuit or the out of court complaints that formed the basis for and are really part and parcel of the lawsuit."[5] Report of Proceedings (RP) (Mar. 14, 2014) at 22. The trial court dismissed SDL's counterclaims and third party claims with prejudice. As required by statute,[6] the trial court ordered SDL to pay reasonable attorney fees, costs, and a $10,000 penalty to each of TBCOT, Thomsen, and Artman. SDL appeals.

## ANALYSIS[7]

### Standard of Review

We review a trial court's ruling on a special motion to strike pursuant to the anti-SLAPP statute de novo. Alaska Structures, Inc. v. Hedlund, 180 Wn. App. 591, 597, 323 P.3d 1082 (2014).

---

[5] We note that the trial court did not have the benefit of our opinion in Alaska Structures, Inc. v. Hedlund, 180 Wn. App. 591, 323, P.3d 1082 (2014), decided after its ruling on the motion to strike.

[6] The anti-SLAPP statute requires courts to award litigation costs, attorney fees, and $10,000 to any party that prevails on a special motion to strike. RCW 4.24.525(6)(a)(i)–(ii).

[7] On January 20, 2015, the Washington Supreme Court heard oral argument in Davis v. Cox, 180 Wn. App. 514, 325 P.3d 255 (2014). The principle issue, among others, is the constitutional validity of the anti-SLAPP statute. The Supreme Court also heard oral argument but stayed three additional anti-SLAPP cases pending a decision in Davis: Dillon v. Seattle Deposition Reporters, LLC, 179 Wn. App. 41, 316 P.3d 1119 (2014), review granted, 180 Wn.2d 1009, 325 P.3d 913 (2014), Akrie v. Grant, 178 Wn. App. 506, 315 P.3d 567 (2014), review granted, 180 Wn.2d 1008, 325 P.3d 913 (2014), Henne v. City of Yakima, 177 Wn. App. 583, 313 P.3d 1188 (2013) review granted, 179 Wn.2d 1022 (2014), and Alaska Structures, Inc. v. Hedlund, 180 Wn. App. 591, 323 P.3d 1082 (2014).

Applicability of the Anti-SLAPP Statute

In response to "Strategic Lawsuits Against Public Participation" or "SLAPPs," the legislature passed an anti-SLAPP statute aimed at promptly disposing of "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." LAWS OF 2010, ch. 118 § 1(a). Whether a court strikes a claim under the statute depends on a two-step analysis. First, the "moving party bringing a special motion to strike a claim . . . has the initial burden of showing by a preponderance of the evidence that the claim is based on an action involving public participation and petition." RCW 4.24.525(4)(b). A court reviews "the pleadings, declarations, and other supporting documents to determine whether the gravamen of the underlying claim is based on protected activity." Hedlund, 180 Wn. App. at 597. If the moving party fails to "make an initial prima facie showing that the [non-moving party's] suit arises from an act in furtherance of the [moving party's] right of petition," the motion to strike should be denied. Hedlund, 180 Wn. App. at 597. Second, if the moving party is successful, "the burden shifts to the responding party to establish by clear and convincing evidence a probability of prevailing on the claim. If the responding party meets this burden, the court shall deny the motion." RCW 4.24.525(4)(b).

As to the first step, SDL relies on Hedlund to argue that private contract disputes are exempt from the anti-SLAPP statute. We disagree. Nevertheless, we conclude that TBCOT failed to show that SDL's counterclaims "arise[] from an act in furtherance of [TBCOT's] right of petition." Hedlund, 180 Wn. App. at 597 (emphasis added).

California courts have noted that a breach of contract claim can constitute protected activity for purposes of the anti-SLAPP statute:

> [P]laintiffs strenuously insist that this is "a garden variety breach of contract and fraud claim" not covered by [the anti-SLAPP statute]. . . . [W]e have declined to hold 'that [the anti-SLAPP statute] does not apply to events that transpire between private individuals' . . . .
>
> . . . .
>
> . . . Nothing in the statute itself categorically excludes any particular type of action from its operation . . . [C]onduct alleged to constitute breach of contract may also come within constitutionally protected speech or petitioning. The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action, but, rather, the defendant's <u>activity</u> that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.

<u>Navellier v. Sletten</u>, 29 Cal. 4th 82, 90–92, 52 P.3d 703, 124 Cal. Rptr. 2d 530 (2002).[8]

Therefore, TBCOT's filing of a complaint in superior court is a protected action under the statute. The statute protects an "action involving public participation and petition," which is further defined as "[a]ny oral statement made, or written statement or other document submitted, in a . . . judicial proceeding . . . ." RCW 4.24.525(2)(a). Further, "It is well established that filing a lawsuit is an exercise of a party's constitutional right of petition." <u>Chavez v. Mendoza</u>, 94 Cal. App. 4th 1083, 1087, 114 Cal. Rptr. 2d 825 (2001). To hold that private contract disputes are exempt from the anti-SLAPP statute contradicts the legislature's instruction that it be "construed liberally to effectuate its general purpose of protecting participants . . . from an abusive use of the courts." LAWS OF 2010, Ch. 118, § 3.

---

[8] "Washington's 2010 anti-SLAPP statute was patterned after California's anti-SLAPP statute. Thus, we can look to California cases for aid in interpreting the act." <u>Spratt v. Toft</u>, 180 Wn. App. 620, 630–31, 324 P.3d 707 (2014) (footnote omitted).

Although TBCOT's complaint is protected activity for purposes of the anti-SLAPP statute, SDL may properly file legitimate counterclaims. See, e.g., Navellier, 29 Cal. 4th at 92–93 ("That contract and fraud claims are not categorically excluded from the operation of the anti-SLAPP statute does not mean . . . that Sletten therefore cannot be sued . . . ."). The fundamental inquiry is whether SDL's counterclaims are "based on" TBCOT's protected activity and therefore within the scope of the anti-SLAPP statute. "To determine whether a pleaded cause of action falls within the ambit of Washington's anti-SLAPP statutes, the trial court must decide whether the claim targets activity involving public participation and petition. To properly do so, the trial court must focus on the principal thrust or gravamen of the claim." Davis v. Cox, 180 Wn. App. 514, 523, 325 P.3d 255 (2014) (footnote omitted). In evaluating the thrust or gravamen of an alleged SLAPP, we consider the pleadings and supporting and opposing affidavits, viewing the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party—in this case, SDL. Davis, 180 Wn. App. at 528. Here, the specific nature of SDL's counterclaims indicates that the thrust or gravamen of the claims does not target TBCOT's complaint. Rather, SDL properly asserts claims arising from alleged prelitigation conduct related to the contract.

In support of its special motion to strike, TBCOT relies primarily on SDL's amended answer. In their amended answer, SDL alleged that the officers of TBCOT complained about various aspects of the purchase transaction. For example, "[w]hen the Team did not make as much money as Third Party Defendants expected, they began to complain that they were misled about the Team's finances . . . ." CP at 117.

TBCOT relied in particular on paragraphs 16 and 19 of the statement of facts underlying SDL's counterclaims, which provide in part:

> Third Party Defendants [Thomsen and Artman, officers of TBCOT] have manufactured their complaints about the Team's finances and value in order to avoid paying Defendants the earn-out as required by the Purchase Agreement. Third Party Defendants' claims are part of a scheme orchestrated in order to set up Defendants and avoid paying the earn-out altogether. . . .
>
> . . . .
> . . . In short, Third Party Defendants want to use Defendants as scapegoats with their investors, and they made sure when they bought the team that they structured the deal in a way that would allow them the opportunity and means to do just that.

CP at 118–19. TBCOT argues the "complaints" SDL identify in their amended answer are all found in TBCOT's complaint. TBCOT therefore concludes, SDL's counterclaims are "based on" TBCOT's protected petitioning activity.

We disagree. The thrust or gravamen of SDL's counterclaims is based on prelitigation conduct and any reference to TBCOT's complaint is merely incidental to those claims. For example, SDL's first counterclaim seeks a declaratory judgment limiting TBCOT's remedy in the action to the remedies described in the purchase agreement. In Davis, members of a food cooperative sought a permanent injunction to prevent cooperative directors from continuing a boycott of Israeli-made products and divestment from Israeli companies. The directors moved successfully to strike the members' complaint. To determine the principle thrust or gravamen of the members' claim, we noted that consideration of the remedy sought is instructive. Because the nonviolent elements of boycotts are protected by the First Amendment, we concluded that the principle thrust of the members' lawsuit "is to make the Directors cease in engaging in activity protected by the First Amendment." Davis, 180 Wn. App. at 530.

We also concluded the boycott was lawful and an issue of public concern. We affirmed the trial court's order and concluded that the directors established that the members' claims targeted protected activity. Unlike in <u>Davis</u>, SDL's claim for declaratory judgment relief does not target TBCOT's petitioning activity. SDL sought to clarify the scope of TBCOT's relief based on the agreement.

SDL's other claims arise from alleged conduct independent from the litigation. In its third counterclaim, SDL alleged that TBCOT "breached its duty of good faith and fair dealing by operating the Acquired Business in a manner that effectively denies any additional earn-out consideration to defendant SDL Baseball Partners, LLC." CP at 120. SDL supports this claim by alleging that TBCOT reduced marketing investments and made excessive distributions to its members. The alleged conduct giving rise to this claim occurred prior to the litigation. The claim relies on TBCOT's alleged deficient performance of contractual obligations, not on TBCOT's filing of the complaint. Similarly, SDL's counterclaims for fraud and misrepresentation are based on prelitigation conduct. In support of its opposition to TBCOT's special motion to strike, SDL submitted the declaration of Robert J. Schlegel.[9] His allegations formed the basis for these counterclaims.

> Third Party Defendants also made several representations to the Schlegels which the Schlegels relied on by rejecting other offers, selling the Team to TBCOT, and structuring the sale with a future "earn-out" provision. Third Party Defendants represented that SDL Partners would receive the "earn-out" payments on the terms set forth in the Purchase Agreement. Had Defendants known that Third Party Defendants never really ever intended to pay the "earn-out," they would not have sold the Team to TBCOT. Third Party Defendants also represented and Defendants expected that Third Party Defendants would run the Team

---

[9] Schlegel is an owner of SDL Partners.

well, report financial information in good faith, not manipulate the financial books and records of the Team for their benefit, and deal with them in good faith and fairly. Defendants also relied on Third Party Defendants' representations that they would market the Team in order to promote ticket sales, but instead Third Party Defendants reduced the Team's marketing budget and marketing efforts, which further impaired the Schlegels' opportunity to receive their "earn-out" payments. All of these misrepresentations have damaged the Schlegels because they have received far less than what TBCOT and Third Party Defendants committed to pay, as well as what they led the Schlegels to believe would be paid.

CP at 204. Viewing the facts in the light most favorable to SDL, these allegations demonstrate that the thrust or gravamen of SDL's counterclaims is based on alleged representations made by TBCOT and TBCOT's subsequent performance of contractual obligations. The counterclaims do not arise from TBCOT's protected petitioning activity, but from conduct that allegedly occurred well before any contract litigation. This is sufficient to survive a motion to strike pursuant to the anti-SLAPP statute. See, e.g., Navellier, 29 Cal. 4th at 93 ("[The anti-SLAPP statute] subjects to potential dismissal only those actions in which the plaintiff cannot 'state[] and substantiate[] a legally sufficient claim.' . . . [T]he statute poses no obstacle to suits that possess minimal merit.").

In fact, both the trial court and TBCOT's counsel correctly noted that at least some of SDL's counterclaims could have been brought independently.[10] RP (Mar. 14,

---

[10] SDL's act of filing its counterclaims is protected activity under the anti-SLAPP statute because the "constitutional right of petition encompasses . . . the basic act of filing litigation." Navellier, 29 Cal. 4th at 90. We note that TBCOT's theory in this case would endorse a race to the courthouse. For example, if SDL had filed a lawsuit first alleging that TBCOT manipulated the level of earnings to avoid earn out payments (under a breach of duty of good faith and fair dealing theory) and TBCOT counterclaimed that through its lawsuit, SDL sought to avoid the result of its own misrepresentation of finances and sale value, under TBCOT's standard, TBCOT would be subject to anti-SLAPP consequences—having its counterclaims stricken and fees

2014) at 13–14. At oral argument before this panel, TBCOT suggested that whether SDL's claims could be brought independently is irrelevant because the mere fact that SDL brought these claims in reaction to TBCOT's complaint is itself evidence that the counterclaims are based on protected petitioning activity. We disagree. "[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute. Moreover, that a cause of action arguably may have been 'triggered' by protected activity does not entail that it is one arising from such." Navellier, 29 Cal.4th at 89 (citation omitted).

In sum, SDL's counterclaims are based on allegations that TBCOT made misrepresentations during the negotiation process and failed to sufficiently perform its contractual obligations. Accordingly, we conclude TBCOT failed to establish that SDL's counterclaims "achieve the objective of a SLAPP suit—to interfere with and burden [TBCOT's] exercise of [its] rights." Navellier, 29 Cal. 4th at 93. TBCOT's motion to strike hinges almost entirely on SDL's mere references to TBCOT's complaint in SDL's amended answer. A review of SDL's counterclaims indicate that these references are incidental to the thrust of the counterclaims. These counterclaims encompass alleged prelitigation conduct. As we explained in Dillon v. Seattle Deposition Reporters, LLC, 179 Wn. App. 41, 316 P.3d 1119 (2014), review granted, 180 Wn.2d 1009, 325 P.3d 913 (2014):

---

and penalties imposed. Adoption of TBCOT's standard is contrary to the case authority discussed above and renders any legitimate counterclaims subject to an anti-SLAPP motion to strike. The unique remedies available under this statute are not merely another weapon in the arsenal of litigation.

"[A] defendant in an ordinary private dispute cannot take advantage of the anti-SLAPP statute simply because the complaint contains some references to speech or petitioning activity by the defendant." . . .

. . . [W]hen the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute.

Dillon, 179 Wn. App. at 71–72 (quoting Martinez v. Metabolife Int'l, Inc., 113 Cal. App. 4th 181, 188, 6 Cal. Rptr. 3d 494 (Cal. App. 2003)). Here, as in Dillon, the references to TBCOT's complaint are collateral allusions irrelevant to the gravamen of SDL's counterclaims.

Because we conclude that under the circumstances here, TBCOT failed to meet its initial burden of showing by preponderance of the evidence that SDL's counterclaims are based on protected activity, we do not address the second prong—whether SDL can show a probability of prevailing on their counterclaims by clear and convincing evidence.[11] Our ruling is limited to the conclusion that TBCOT fails to meet its initial burden under the anti-SLAPP statute and does not preclude the trial court from determining the sufficiency of SDL's counterclaims on appropriate motions including summary judgment. See, e.g., Hedlund, 180 Wn. App. at 603. The trial court erred in striking SDL's pleadings under the anti-SLAPP statute.

Finally, the anti-SLAPP statute awards mandatory fees and costs to the prevailing party. RCW 4.24.525(6). "[W]here a prevailing party is entitled to attorney

---

[11] TBCOT relies on Albergo v. Immunosym Corp., 2011 WL 197580 (S.D. Cal, Jan. 20, 2011). There plaintiffs claimed they were induced to enter into contracts. They filed suit alleging, among other claims, fraud and fraud in the inducement. Defendants counterclaimed alleging four claims including fraud. Albergo is not persuasive. As discussed above, under Washington law, the thrust or gravamen of SDL's counterclaims relate to matters that implicate prelitigation conduct and any reference to TBCOT's complaint is merely incidental to those claims.

fees below, they are entitled to attorney fees if they prevail on appeal." Sharbono v. Universal Underwriters Ins. Co., 139 Wn. App. 383, 423, 161 P.3d 406 (2007). Because we reverse the trial court's order granting TBCOT's special motion to strike, we also reverse the trial court's award of attorney fees, costs, and mandatory statutory penalties.

## CONCLUSION

We reverse and remand with instructions to reinstate SDL's counterclaims and third party claims.

WE CONCUR: