IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| AMY SWANSON,<br><br>             Respondent,<br><br>        v.<br><br>BO SWANSON,<br><br>             Appellant. | No. 87449-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUNG, J. — Bo Swanson appeals the denial of his CR 60(b) motion to vacate final dissolution orders after he did not appear for the dissolution trial that determined custody of his two children and the distribution of assets accumulated with his spouse, Amy Swanson. He argues that the trial court erred when it determined there was no basis to vacate pursuant to CR 60(b)(1), (4), or (11). We disagree and affirm.

FACTS

Amy and Bo began dating in 2002.[1] They started living together in 2005, became legal domestic partners in 2006, and were married in 2011. They have two children from their marriage, who were minors at the time of dissolution. They separated in 2021.

Amy filed a petition for dissolution in June 2022. The record indicates Bo sought at least two continuances for the trial. He also objected to Amy's request to relocate with their two children to Texas. On November 20, 2023, the superior court granted Bo's motion to continue the trial to June 2024 and to appoint a new parenting evaluator. It

---

[1] Since the parties share a last name, this opinion will refer to them by their first names for clarity.

also issued an order amending the case schedule and setting trial for June 3, 2024. Bo's counsel later withdrew on January 9, 2024.

A pre-trial conference was held on May 10, 2024. Bo did not appear. The corresponding pre-trial conference order indicated Bo was unrepresented and that despite the appointment of a parenting evaluator, Bo "has failed to participate until recently (last month or so)." Amy objected to further delays, and the court ruled "that [the] matter will proceed to trial without [a parenting evaluation] report, but will reconsider if [Bo] appears at [the] next pretrial hearing prior to trial." The order also indicated that trial could be put on standby status, and that "parties and witnesses must be available to begin trial Monday through Thursday the week of trial." It further specified that a party "must contact the undersigned judge's bailiff at least 5 days before trial for information about trial's status," and that "[t]he parties are responsible for keeping the Court updated with current contact information." The order was electronically filed.

The record from a May 24, 2024, follow-up status hearing indicated that Bo was not present and that the trial date set for the week of June 3, 2024, remained the same. The court then reassigned the matter to a different judge effective June 13, 2024,[2] and the court e-mailed the parties that trial would begin on Monday, June 17.

Amy appeared for trial on June 17, but Bo did not. Because Bo had "participated in the case" and the court did not hear from him "as to any reason for an absence" like illness or "some other impediment," the court determined there was no basis to delay the proceeding. Consequently, Amy was sworn in and testified about the dissolution of

---

[2] Though the record does not include communications after the status hearing regarding the June 3 trial date prior to the case reassignment, Bo states in his briefing that the "[p]arties were assumedly notified of the pre-trial conferences and standby trial status by e-mail."

2

the marriage and division of assets, the parenting plan and child support, and a request for relocation to Texas with their two children.

The trial court issued final orders, permitting Amy to relocate with the children to Texas and awarding a 50/50 split of the couple's property, which included a home purchased in 2005. The court ordered that the house was to be sold and the proceeds split evenly between the parties. The court also placed parenting limitations on Bo under former RCW 26.09.191 (2021) due to his "history of domestic violence," which resulted in "limited contact" as reflected in the parenting time schedule. Bo did not appeal these final orders.[3]

On August 27, 2024, new counsel filed a notice of appearance on Bo's behalf. On September 11, 2024, Bo moved to vacate the orders under CR 60(b)(1), (4), and (11). The court denied the motion, finding no irregularity in the proceedings, excusable neglect, or any other basis to vacate the final orders and hold a new trial. This appeal timely follows.

## DISCUSSION

Bo contends that the trial court erred in denying his motion to vacate on several grounds. First, he argues that pursuant to CR 60(b)(1) there was an irregularity in the proceedings and that his absence at trial was due to excusable neglect. He also argues the trial court erred in concluding that there was no basis to vacate the final dissolution orders pursuant to CR 60(b)(4) because Amy allegedly misrepresented facts at trial. Finally, he challenges the court's conclusion that there was no basis to vacate the final

---

[3] The court signed the "Findings and Conclusions About a Marriage," "Final Order and Findings on Objection about Moving with Children and Petition about Changing a Parenting/Custody Order," "Parenting Plan," "Child Support Order," and "Child Support Worksheets" on July 12, 2024. The court signed the "Final Divorce Order" on July 26, 2024.

dissolution orders pursuant to CR 60(b)(11), which allows the court to vacate a judgment for "[a]ny other reason justifying relief."

## I. Trial Court's Denial of CR 60 Motion

Bo appeals only the trial court's order denying his CR 60(b) motion—not the underlying final dissolution orders. The exclusive procedure to attack an allegedly defective judgment is by appeal from the judgment, not by appeal from the denial of a CR 60 motion. Bjurstrom v. Campbell, 27 Wn. App. 449, 451, 618 P.2d 533 (1980). Accordingly, we review only "the propriety of the denial," and not the alleged "impropriety of the underlying judgment." Id.

We review a superior court's ruling on a CR 60(b) motion for abuse of discretion. Jones v. Home Care of Wash., Inc., 152 Wn. App. 674, 679, 216 P.3d 1106 (2009). "Discretion is abused where it is exercised on untenable grounds or for untenable reasons." Id.

### A. CR 60(b)(1)—Irregularity in Proceedings

Bo argues that the absence of an attachment to the final dissolution order— "Exhibit A"—was an irregularity in proceedings that warranted a new trial pursuant to CR 60(b)(1). We disagree.

At trial, Amy presented a spreadsheet—Exhibit A—detailing what she would "like to have happen with the personal . . . property, vehicles, and other personal property between" herself and Bo. After hearing Amy's testimony, the court stated it intended to "adopt . . . [Amy's] division of assets and debts" as a basis for distributing the marital estate. Further, the court referenced "Exhibit A" multiple times in its "Final Divorce

4

Order," including stating, "[t]his Exhibit is attached and made part of this Order," even though it did not physically attach it.

Bo sought relief for the missing exhibit under CR 60(b)(1). Under this provision, a trial court may "relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order." CR 60(b)(1). Specifically,

> [a]n 'irregularity,' within the meaning of this rule, has been defined as the want of adherence to some prescribed rule or mode of proceeding; and it consists either in the omitting to do something that is necessary for the due and orderly conducting of a suit, or in doing it in an unreasonable time or improper manner.

Haller v. Wallis, 89 Wn.2d 539, 543, 573 P.2d 1302 (1978).

During the hearing on the motion to vacate, the court agreed with Bo that there was "an omission of an exhibit, Exhibit A," but it reasoned that "the existence of that exhibit, its reference and its omission is [a] clerical [] mistake and not substantive in terms of impact on this Court's decision when entering the final orders earlier this year." CR 60(a) permits a court to grant relief from "clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission . . . at any time of its own initiative or on motion of any party." "In deciding whether an error is 'judicial' or 'clerical,' a reviewing court must ask itself whether the judgment, as amended, embodies the trial court's intention, as expressed in the record at trial." Presidential Ests. Apt. Assocs. v. Barrett, 129 Wn.2d 320, 326, 917 P.2d 100 (1996).

If the answer to that question is yes, it logically follows that the error is clerical in that the amended judgment merely corrects language that did not correctly convey the intention of the court, or supplies language that was inadvertently omitted from the original judgment. If the answer to that question is no, however, the error is not clerical, and therefore, must be judicial.

Id.

On appeal, Bo again attempts to frame the missing exhibit as a CR 60(b)(1) issue. However, he fails to address the question raised on appeal, which is whether the trial court erred when it instead concluded that the omission was a clerical error.

A claim of irregularity "goes to the integrity of the proceedings." Mosbrucker v. Greenfield Implement, Inc., 54 Wn. App. 647, 652, 774 P.2d 1267 (1989). For example, in Mosbrucker, the lessors of business properties, sued the lessee, Greenfield Implement, Inc., when Greenfield's lease assignee defaulted. Id. at 648. Along with others, Larry Clark had signed the lease as a guarantor and officer of Greenfield, but his signature had subsequently been crossed out. Id. The lessors obtained a default judgment, and Clark sought to set it aside based on CR 60(b)(1). Id. The reviewing court held that the trial court erred in failing to consider Clark's claim of irregularity, because the court "may well have refused to [grant the default judgment] . . . had he seen that the signature upon which the judgment was sought had been crossed off—a fact which the [lessors] knew when they brought suit." Id. at 653. Similarly, in Wilson v. Henkle, the court upheld an order vacating an ex parte judgment based on a writ of garnishment, reasoning that had the commissioner been informed that the back of the answer to the writ reflected a dispute over ownership of the funds, he would not have signed the judgment. 45 Wn. App. 162, 168-69, 724 P.2d 1069 (1986).

6

Unlike in Mosbrucker and Wilson, where the courts were not apprised of information that would likely have changed their decisions under review, here, the court was aware of Exhibit A. Indeed, the court in this case not only considered the spreadsheet when it distributed the marital estate, but it explicitly stated that it was "adopting [Amy's] division of assets and debts." The court reemphasized this intent at the hearing on Bo's motion to vacate when it stated it was "going to enter Exhibit A, because that's what [it] intended to do." The trial court concluded that the omission of Exhibit A from the final dissolution order was a clerical error, as the judgment amended with the addition of Exhibit A "embodies the trial court's intention, as expressed in the record at trial." Presidential Ests. Apt. Assocs., 129 Wn.2d at 326. As the adjustment to the record merely conveys the court's intention and supplies a document that was inadvertently omitted from the original judgment, the trial court did not abuse its discretion when it determined the omission was clerical in nature and provided the remedy of entering Exhibit A into the record.

Bo additionally contends there was an irregularity in the proceedings because he did not receive "actual notice" of the trial date. Amy counters that because Bo fails to cite any cases, statutes, or rules defining what notice is required when a "*pro se* litigant fails to appear for trial," this court should decline to consider the argument. We agree with Amy.

Generally, this court will not "address unsupported legal arguments or those given only passing treatment." Campanelli v. PeaceHealth Sw. Med. Ctr., 34 Wn. App. 2d 24, 47 n.18, 565 P.3d 933 (2025). Here, Bo highlights that at the start of trial the court acknowledged that Bo had appeared in the case "but the Court did not make any

attempts to contact [Bo] or inquire as to his whereabouts before starting trial on June 17, 2024." He also acknowledges that "[p]arties were assumedly notified of the pre-trial conferences and standby trial status by e-mail." But he fails to identify a rule or procedure that controlled what constituted "actual notice" under the circumstances, or how the notice he received deviated from such a rule. Therefore, his unsupported argument that an irregularity resulted from how he received notice is unavailing.

### B. CR 60(b)(1)—Excusable Neglect

Next, Bo argues that his absence at trial constituted excusable neglect entitling him to relief under CR 60(b)(1), citing the four-factor test first recognized by our Supreme Court in White v. Holm, 73 Wn.2d 348, 352, 438 P.2d 581 (1968).[4] As a preliminary matter, Amy argues that the White v. Holm test does not apply because the judgment in this case was not a default judgment. Ordinarily, "[c]ourts apply CR 60(b) more liberally to judgments by default than those on the merits." Stanley v. Cole, 157 Wn. App. 873, 879, 239 P.3d 611 (2010).

Under CR 55(a)(1), a party may move for an order of default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to appear, plead, or otherwise defend as provided by these rules and that fact is made to appear by motion and affidavit." However, mere failure to attend trial does not necessarily render an ensuing judgment a default judgment. For example, in Tacoma Recycling, Inc. v. Capitol

---

[4] This test requires that

> A party moving to vacate a default judgment must be prepared to show (1) that there is substantial evidence supporting a prima facie defense; (2) that the failure to timely appear and answer was due to . . . excusable neglect; (3) that the defendant acted with due diligence after notice of the default judgment; and (4) that the plaintiff will not suffer a substantial hardship if the default judgment is vacated.

Little v. King, 160 Wn.2d 696, 703-04, 161 P.3d 345 (2007) (citing White v. Holm, 73 Wn.2d 348, 352, 438 P.2d 581 (1968)).

Material Handling Co., though defendant failed to attend a bench trial, the judgment was not a default judgment because the defendant had filed pleadings and, therefore, appeared in the case. 34 Wn. App. 392, 395-96, 661 P.2d 609 (1983).

Here, similar to the defendant in Tacoma Recycling, Bo appeared through counsel and sought a continuation of trial on at least two occasions. He also filed an objection to Amy's attempt to relocate with their children to Texas. And even after his attorney withdrew,[5] as close as six weeks before trial, Bo engaged with the parenting evaluator to try to schedule his first interview.[6] Significantly, Amy never filed a motion for default, and the court proceeded with a trial on the merits. Bo's failure to appear at trial is not the equivalent of failing to appear or failing to prosecute a case, resulting in a default order or judgment. Therefore, we decline to apply the more liberal standard for default judgments on his CR 60(b)(1) motion to vacate.[7]

We next address whether the court abused its discretion in denying Bo's motion for relief from judgment based on excusable neglect. Excusable neglect "does not require a showing of blamelessness" and "may apply when a party's actions are attributable to negligence." Matter of Marriage of Gharst, 25 Wn. App. 2d 752, 758, 525 P.3d 250 (2023). Accordingly, "negligence or carelessness does not prevent a court in equity from discretion to relieve a litigant from an adverse judgment." Id. Courts determine whether excusable neglect applies on a case-by-case basis. Rosander v. Nightrunners Transp., Ltd., 147 Wn. App. 392, 406, 196 P.3d 711 (2008). Ordinarily,

---

[5] In the notice of intent to withdraw, Bo's attorney provided an address, requesting that all future pleadings to Bo be directed there.

[6] The interview did not take place, and the parenting evaluator decided to move forward with Amy's portion of the investigation.

[7] Bo fails to address this issue, even in his reply brief.

9

> [r]elief from judgment based on excusable neglect requires an analysis of not only a litigant's mental state but also other circumstances, including "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, [and] the reason for the delay, including whether it was within the reasonable control of the movant."

Gharst, 25 Wn. App. 2d at 759 (quoting Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993)).

In Gharst, a spouse appealed the trial court's denial of her motion to vacate the final dissolution order following a bench trial in which she did not appear. Id. at 755-56. The trial court explained that it denied her motion because she had received notice of the trial date. Id. at 760. Division Three of this court held this denial was an abuse of discretion because the trial court relied on the incorrect legal standard. Id. Most significantly, Division Three reasoned that because the moving party had experienced a series of ministrokes that resulted in a severe stroke that impacted her ability to speak, concentrate, and organize her thinking, id. at 756, 759, she had "alleged the requisite kind of mental state that would qualify for relief from judgment based on excusable neglect." Id. at 759. And despite her traumatic injuries, she still made repeated attempts to contact the petitioner regarding the court date. Id. at 756.

Here, the trial court did not abuse its discretion when it determined Bo failed to demonstrate a mental state or reason for delay that could qualify as excusable neglect. Bo did not present a cognitive impairment like the spouse's mental state in Gharst that could justify relief from judgment based on excusable neglect. Rather, Bo stated in his declaration that while proceeding pro se, he was "confused about the date and process of trial, overwhelmed by everything going on in their lives, and believed some incorrect information about the process of trial and finalizing [the] case." He does not dispute that

the record includes a pretrial order with the same trial date as in the original case schedule, that the parties were put on notice that the trial could be placed on standby status; that the order stated it was mailed/e-mailed to Bo; or that two bailiffs also e-mailed him the week prior to tell him about the new trial date and assignment to a new judge. Rather, Bo admitted that he "was not prudent in checking [his] e-mail, and should have sought out e-mails that [he] received from the court and opposing counsel" and "receive[s] hundreds of e-mails [a] day, and was not seeking out important ones or screening them diligently." And other than stating that he assumed trial would not proceed if the "parenting investigator hadn't completed her report by our trial date in June," he offered no evidence that he made an effort to calendar deadlines, contact the court, or appear for trial. Based on this record, the trial court did not abuse its discretion in declining to vacate the judgment based on excusable neglect.

C. CR 60(b)(4)—Misrepresenting Facts at Trial

Next, Bo contends that he was entitled to relief by motion to vacate on the grounds that Amy misrepresented facts at trial, citing CR 60(b)(4). We disagree.

CR 60(b)(4) states that "a court may relieve a party . . . from a final judgment, order, or proceeding for . . . [f]raud (whether . . . intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." "The rule is aimed at judgment unfairly obtained, not factually incorrect judgments." Sutey v. T26 Corp., 13 Wn. App. 2d 737, 756, 466 P.3d 1096 (2020).

Furthermore, "the fraudulent conduct or misrepresentation must *cause* the entry of the judgment such that the losing party was prevented from fully and fairly presenting its case or defense." Lindgren v. Lindgren, 58 Wn. App. 588, 596, 794 P.2d 526 (1990).

11

"[M]isconduct or misrepresentation need not be intentional but may merely be careless." Hor v. City of Seattle, 18 Wn. App. 2d 900, 912, 493 P.3d 151 (2021). However, mere allegations of fraud or impropriety are insufficient to warrant relief. See Allison v. Boondock's, Sundecker's, & Greenthumb's, Inc., 36 Wn. App. 280, 285-86, 673 P.2d 634 (1983) (reasoning that mere use of civil rules to party's advantage regarding filing deadlines did not qualify as "unfair or deceptive" when it properly served the other party); Bergren v. Adams County, 8 Wn. App. 853, 857, 509 P.2d 661 (1973) (denial of CR 60(b)(4) motion was proper when party argued fraud but the record did not support the contention). "The party attacking a judgment under CR 60(b)(4) must establish the fraud, misrepresentation, or other misconduct by clear and convincing evidence." Lindgren, 58 Wn. App. at 596. Our review is limited to deciding whether the evidence shows that fraud, misrepresentation, or misconduct was "highly probable." Dalton v. State, 130 Wn. App. 653, 666, 124 P.3d 305 (2005).

Bo's allegations of misrepresentation relate to whether a piece of real property is separate or communal in nature and his relationship with his children. In the final dissolution order, the court identified the property at issue as communal and ordered it to be sold with the proceeds "split equally between the parties." Bo also argues that Amy "falsely represented . . . that [he] presented a danger to the children," "failed to exercise his residential time, that the interactions between [him] and the children are strained, and that it would be in the children's best interest to relocate to Texas," which "resulted in a parenting plan not suited to meet the family's current needs."

Bo's arguments about alleged misrepresentation concern the merits of the dissolution, rather than the manner in which the dissolution of marriage or final

parenting plan were obtained. But CR 60(b)(4) "does not . . . permit a party to assert an underlying cause of action for fraud [or misrepresentation] that does not relate to the procurement of the judgment." Lindgren, 58 Wn. App. at 596. Bo fails to show how the alleged misrepresentations "cause[d] the entry of judgment" such that he "was prevented from fully and fairly presenting" his case or defense, much less by clear and convincing evidence, as he must to prevail. See id. (emphasis omitted). Instead, Bo could have litigated these issues at trial or on direct appeal, but not on a motion to vacate. See In re Marriage of Maddix, 41 Wn. App. 248, 252-53, 703 P.2d 1062 (1985) (reasoning that failure to disclose the true value of an asset disposed of in a dissolution proceeding did not constitute fraud necessary to vacate a decree). Thus, the trial court did not err when it denied Bo CR 60(b)(4) relief based on alleged misrepresentation.

### D. CR 60(b)(11)—Any Other Reason Justifying Relief

Finally, Bo contends that the final dissolution orders should be vacated "for other reasons under CR 60(b)(11)." Specifically, he argues that he "met his prima facie burden in establishing the divorce orders in this case likely would not have been entered" if he was able to present his case at trial.[8] We disagree.

CR 60(b)(11) allows relief from judgment for "[a]ny other reason justifying relief." However, the use of CR 60(b)(11) is confined to situations involving extraordinary circumstances not covered by other sections of the rule. Barr v. MacGugan, 119 Wn. App. 43, 45-46, 78 P.3d 660 (2003); In re Marriage of Hammack, 114 Wn. App. 805, 809-10, 60 P.3d 663 (2003).

---

[8] He also reemphasized that "[d]efault judgments are not favored in the law," but as we discussed above, the resulting orders from the trial were on the merits.

Here, Bo does not demonstrate any extraordinary circumstance requiring relief from judgment that is not covered by other sections of the rule. Rather, he reiterates his arguments on other CR 60 grounds, i.e., the fairness of the dissolution decree. Accordingly, we conclude the trial court did not abuse its discretion in denying Bo's motion to vacate under CR 60(b)(11).

## II. Request for Attorney Fees

Amy requests attorney fees on appeal on several bases. She notes that RCW 26.09.140 gives courts authority to award fees in family law cases. She also seeks fees based on Bo's intransigence in the trial court and continuing on appeal. Further, she claims that because the trial court awarded her fees for having to respond to the CR 60 motion, as the prevailing party on the motion below, she is also entitled to fees on appeal. Finally, she seeks fees based on the frivolous nature of Bo's appeal.

An appellate court may award fees on appeal if applicable laws grant a party the right to recovery or expenses. RAP 18.1(a). Pursuant to RCW 26.09.140, an appellate court may "in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorney[] fees in addition to statutory costs" based on "the financial resources of both parties," provided the party seeking fees submits an affidavit of need as required by RAP 18.1(c). Amy did not timely submit an affidavit of need, so we decline to award her reasonable attorney fees and costs for defending this appeal.

Also, while Amy is correct that "where a prevailing party is entitled to attorney fees below, they are entitled to attorney fees if they prevail on appeal," Sharbono v. Universal Underwriters Ins. Co., 139 Wn. App. 383, 423, 161 P.3d 406 (2007), she fails to identify an applicable law that would permit this court to grant her the right to recovery

14

or expense as the prevailing party. Compare Baseball Club of Tacoma v. SDL Baseball Partner, LLC, 187 Wn. App. 519, 533, 348 P.3d 1283 (2015) (awarding fees to prevailing party at trial and on appeal based on statute that awards mandatory fees and costs to the prevailing party). Accordingly, we decline to award fees on that basis.

"Intransigence is a basis for awarding fees on appeal, separate from RCW 26.09.140 (financial need) or RAP 18.9 (frivolous appeals)." Mattson v. Mattson, 95 Wn. App. 592, 605, 976 P.2d 157 (1999). "A court may award one party attorney fees based on the other party's intransigence if the other party engages in foot-dragging and obstruction." In re Marriage of Pennamen, 135 Wn. App. 790, 807, 146 P.3d 466 (2006). "The party requesting fees for intransigence must show the other party acted in a way that made trial more difficult and increased legal costs, like repeatedly filing unnecessary motions or forcing court hearings for matters that should have been handled without litigation." Id.

Here, Amy fails to discuss particularized events that indicate Bo engaged in foot-dragging and obstruction in bringing this appeal. It is undisputed he missed trial and then filed a timely motion to vacate. The court then denied the motion, and he filed a timely appeal. Nowhere does Amy indicate that Bo has made this appeal more difficult and increased legal costs due to intransigence as opposed to the normal cost and time associated with litigation. Therefore, we decline to award fees to Amy on this basis.

As for Amy's argument that Bo's appeal is frivolous, "[a]n appeal is frivolous if, considering the entire record, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ and that it is so devoid of merit that there is no possibility of reversal." Lutz Tile, Inc. v. Krech, 136 Wn. App. 899,

906, 151 P.3d 219 (2007). "[A]n unsuccessful appeal is not necessarily frivolous." Protect the Peninsula's Future v. City of Port Angeles, 175 Wn. App. 201, 220, 304 P.3d 914 (2013). "[W]e resolve any doubts to whether an appeal is frivolous in the appellant's favor." Id. Even though we deny Bo's claims, his unsuccessful appeal is not necessarily frivolous. Therefore, we decline to award fees based on Amy's argument that the appeal is frivolous.

CONCLUSION

We affirm.

_____
Chung, J.

WE CONCUR:

_____     _____
                                Mann, J.